### In re TYLER.

(District Court, N. D. Iowa, C. D.   July 31, 1922.)

#### No. 1466.

Bankruptcy ☞68—Person "engaged chiefly in farming."

Alleged bankrupt owned a 400-acre farm, from which he had retired to town; the farm being operated as a stock farm by himself and a son, who resided thereon. Under the agreement the father was to personally assist in the work in busy seasons, which he did, the son was to furnish teams and his services, each was to furnish one-half the seed and stock, and each share in the management and equally in profits and losses. The

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

father had no other business, but became indebted through indorsement of notes for another son, in whose business, however, he had no interest. *Held*, that he was engaged chiefly in farming, and under Bankruptcy Act, § 4 (Comp. St. § 9588), was exempt from involuntary adjudication in bankruptcy.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Farming.]

In Bankruptcy. In the matter of Lewis E. Tyler, alleged bankrupt. On issue as to defendant's liability to adjudication, held exempt.

Clarence M. Hanson, of Ft. Dodge, Iowa, for petitioners.

Healy, Thomas & Healy, of Ft. Dodge, Iowa, for bankrupt.

SCOTT, District Judge. The above-entitled matter came before the court on the 19th day of June, 1922, upon a petition in involuntary bankruptcy by three of his creditors and the alleged bankrupt's answer thereto. The acts of bankruptcy alleged consist of executing certain mortgages as security for debts within four months while insolvent. The answer denies the alleged acts of bankruptcy, denies insolvency, and pleads that the alleged bankrupt is within the exempt class from involuntary adjudication, for that he is a farmer whose principal business is the tilling of the soil, and that he has no other business or occupation, and upon the question of the commission of acts of bankruptcy and his solvency the alleged bankrupt demands a jury trial. The petitioners appeared by their attorney, Clarence M. Hanson, of Ft. Dodge, Iowa, and the alleged bankrupt by his attorneys, Healy, Thomas & Healy, of Ft. Dodge, Iowa, and, when the case was called for trial, by stipulation in open court it was agreed that the matter should be submitted upon the one issue as to the exemption of the alleged bankrupt from involuntary bankruptcy by reason of Lewis E. Tyler, at time of the alleged acts of bankruptcy, being a person engaged chiefly in farming or the tillage of the soil. It was further stipulated that, in case that issue was found in favor of Tyler, the creditors' petition should be dismissed. Upon the issues and stipulation stated, the matter proceeded to trial upon the testimony of witnesses and the introduction of certain documentary evidence identified, and the trial concluded, and the cause submitted to the court and taken under advisement. And now, on this 31st day of July, 1922, said cause came on for final consideration and determination.

The question upon which the matter is submitted is a mixed question of law and fact. Whether an alleged bankrupt is within the exempted class is a question of fact, however, it must be determined from the evidence introduced in each particular case. The evidence in this case shows that Lewis E. Tyler is a man 66 years old, the owner of a 400-acre farm in Hamilton county, Iowa, upon which he had lived for many years as an active farmer, until about 9 years before the hearing. About 9 years ago Tyler removed from the farm to the town of Ellsworth, a few miles distant, where he purchased a home and has since lived. He entered into a verbal contract with his son Ernie, by the terms of which it was agreed that the son would move upon the farm, and that the farm should be operated as an ordinary stock farm. At the time the plan

came under discussion the son raised the objection that he doubted his ability to handle all of the land without help, and the testimony of the father and son both tends to show, and such testimony is uncontradicted, that it was agreed that the father should during all busy seasons personally assist his son in the work upon the farm; that the son should furnish the teams and tools, the father would furnish the land, the son devote all of his time to the work, and the father devote his time as was required during the busy season; that the farm should be stocked, the father and son paying for and owning the stock jointly and in equal, shares, the stock to consist of cattle and hogs; that the seed should be furnished jointly, and that they should jointly co-operate in the supervision and planning of the work and enterprise; that the losses in stock should be jointly and equally borne, and that the product of the farm, grain, and stock as the same might be sold, after deducting such expense as was agreed to be joint, should be divided equally. The testimony shows that Tyler did work, assisting his son on the farm during all of the busy seasons, during seeding, haying, harvesting, and whenever extra help was needed; that the father and the son consulted as to the amount of the respective crops to be sown, and planned as to the time of marketing the product, and upon other matters which were handled together under consultation under the circumstances; that, if the judgment of the father and son disagreed on these matters, the custom was that the father's judgment controlled. During this period of time the father had no other business.

It appears from the evidence that the father had another son, who some years ago was engaged in the piano and sewing machine business; that later he became interested in a corporation known as the Hanson & Tyler Auto Company, and that in connection with the business of this son the alleged bankrupt had been induced to become his surety upon certain obligations, under such circumstances and to such extent as has involved the alleged bankrupt to a condition of this alleged insolvency. The testimony shows, however, that the alleged bankrupt was in no way interested in the business of his son, and that any liability incurred in that respect was gratuitous and as an accommodation.

It is contended by counsel for petitioning creditors that the alleged bankrupt is an ordinary retired farmer, and not engaged in farming, and that he receives his income from the farm for the use of the land. It is contended that the case should be ruled by the decision in In re Driver (D. C.) 252 Fed. 956, and In re Leland (D. C.) 185 Fed. 830, and In re Matson (D. C.) 123 Fed. 743. The instant case is clearly distinguishable from In re Driver, in the opinion of the court. It is true Driver was the owner of three farms, and rented two of them to his son on shares. The farms were in New Jersey, and they were not stock farms, and no joint herds of live stock were maintained upon them. It is true the father and son testified in that case that it was agreed that the father should help the son in working upon the farm, and that he did so to a considerable extent; but the court found as a fact in that case that the assistance given by the father to the son was as a mere matter of accommodation and favor. In this case the court is of opinion that under the evidence the work to be done and actually done by the father upon

the farm was an ingredient of the contract, and the work done in performance of the contract. In the Driver Case the father likewise had incurred large indebtedness, had indorsed numerous notes used by others in the promotion of several enterprises. The court said:

"What Driver expected to realize from these ventures is not clear. He, though prodded to do so, could not or would not give an intelligent account why he indorsed such notes, or what he was to get for thus lending his credit. He held stock in one of the enterprises thus aided, and he admits that he expected to gain something by reason of his indorsements."

And again the court says:

"He had no control over the operations of any of his farms, and he had no responsibility for their management."

It is clear, from a reading of the Driver Case, that the court concluded that the alleged bankrupt was interested in the ventures in connection with which he sustained the losses, and his relation to the farms and his personal activities with respect thereto clearly and widely differ from the relation and activities of Tyler in connection with his farm.

In the case of In re Leland the distinction is even greater. In that case the farmer engaging actively in other business after moving to town, viz. the drayage and livery business, had no such close connection with the operation of the farm as did Tyler.

In In re Matson the farmer had rented his farm for cash rent to his son. There was no joint enterprise whatever.

After a careful examination of all of the evidence and the briefs of counsel, the court is constrained to conclude that, at the time of the alleged acts of bankruptcy, Lewis E. Tyler was a person engaged chiefly in farming or the tillage of the soil, and was, under section 4 of the Bankruptcy Act of 1898 (Comp. St. § 9588), exempt from an involuntary adjudication in bankruptcy. Therefore upon the record and stipulation of the parties it is ordered that the petition of the creditors for involuntary adjudication in bankruptcy be and the same is hereby dismissed.