BERTHA E. MARX, Appellant, v. CHARLES C. CLARK et al.,
                        Appellees.

**MORTGAGES: Redemption—"Debtor" Defined.** The grantee of land
 1  who buys *subject to* an existing mortgage is a "debtor," within the
    meaning of the redemption statutes; and the original mortgagor is
    not entitled to the possession of the land or to the value of such
    possession during the redemption period following foreclosure, even
    though such mortgagor is the only "debtor" who is *personally
    liable for the mortgage debt.*

**MORTGAGES: Foreclosure—Sale—Inclusion of Taxes—Effect.** A mort-
 2  gagee who, on foreclosure, takes judgment for the taxes paid by
    him, and, on sale, bids the full amount of his judgment, thereby
    fully satisfies the claim for said taxes; and neither he nor one
    claiming under him can collect said taxes a second time, even from
    a grantee obligated to pay them. (See Book of Anno., Vol. 1, Sec.
    12376, Anno. 38.)

**CONTRACTS: Mutuality—Third Parties.** A contract between a mort-
 3  gagor and a mortgagee by which the former purchased his free-
    dom from a deficiency judgment on foreclosure sale cannot work
    an obligation on the part of a grantee of the premises who was in
    no manner a party to the contract.

    **Headnote 1:** 27 Cyc. p. 1738. **Headnote 2:** 27 Cyc. p. 1788. **Head-
note 3:** 27 Cyc. p. 1788.

*Appeal from Cherokee District Court.*—WILLIAM HUTCHINSON, Judge.

FEBRUARY 16, 1926.

REHEARING DENIED MAY 14, 1926.

SUIT in equity, to enforce against the defendants Clark certain obligations implied by law, as alleged. The district court dismissed the petition, and the plaintiff appeals.—*Affirmed.*

*Nelson Miller,* for appellant.

*Molyneux, Maher & Meloy,* for Charles C. Clark *et al.,* appellees.

*L. J. McGivern,* for Henry Quirin and Herbert A. Hueser, appellees.

EVANS, J.—The objective of this suit is twofold: (1) To recover from the defendants Clark the immediate possession of certain real estate occupied by them and held during the year of redemption after execution sale; (2) to recover against the same defendants a personal judgment for taxes which they, as owners, ought to have paid, and which the plaintiff, as a prior mortgagor and prior grantor, was compelled to pay, pursuant to the terms of the mortgage executed by her.

1. MORTGAGES: redemption: "debtor" defined.

. The proofs in the case consist, in the main, of record evidence, supplemented by oral evidence. The facts, stated first as they appear from record evidence, are:

In 1918, the plaintiff acquired from Quirin the title and ownership of certain 240 acres of land. She took the same incumbered by a first mortgage, amounting to $15,000. For a part of the purchase money she executed her note and a second mortgage upon the same land for $34,400. In January, 1919, she sold the farm to King for $69,400. King took conveyance from her *subject* to the mortgages, amounting to $49,400, and paid her $20,000 as the difference between such price and the incumbrances. In 1919, King sold to Heline for $75,000. Pursuant to the sale, Heline went into possession in

1919, and so continued for the period of two or three years. The conveyance to Heline was also *subject* to the mortgages. In December, 1921, Heline sold to the defendants Clark, *subject to the mortgages and taxes*. The defendants Clark went into possession pursuant to such deed, by tenant, and so continued up to the beginning of this suit. Their tenant was the defendant Hueser, who had also been the tenant of Heline since 1919. The taxes for the years 1920, 1921, and 1922 were allowed to become delinquent. Those for the first two years were collected by tax sale. Quirin, as mortgagee, redeemed from the tax sales, and paid the tax for 1922, and included the amount thus paid in the amount of recovery claimed by him in the foreclosure suit. Decree was entered accordingly. The sum total of such taxes and redemption amounted to $1,508. The decree awarded personal judgment against the plaintiff herein, as the mortgagor and maker of the notes. No other vendee had assumed personal liability for such mortgage. Special execution was issued under the decree, and the land was sold thereunder on June 9, 1923. The execution plaintiff became the purchaser at the execution sale. His bid was for the full amount of the execution. No redemption was ever offered by any defendant, and the execution plaintiff, Quirin, obtained a sheriff's deed on June 11, 1924. The defendants Clark continued in possession by their tenant, Hueser, up to such date. This suit was begun November 10, 1923. This plaintiff prays that she be awarded the right of possession of the farm during the year of redemption, or the value thereof. She further claims recovery of $1,508, being the amount of taxes which the defendants Clark and Heline neglected to pay. If she be not allowed a personal judgment for such taxes, she prays that her claim be impressed as a lien upon the right of possession during the year of redemption.

This claim is predicated upon certain facts extraneous to the record evidence, which we have already set forth. These are: That she was advised by Quirin, in advance of the execution sale, that he would not bid the full amount of his claim upon the mortgaged property; that he would retain and rely upon a deficiency judgment against her; that, in order to avoid

such deficiency judgment, this plaintiff agreed with Quirin to pay him $3,900; that only in consideration of such agreement did Quirin bid the full amount of the judgment at the execution sale; that pursuant to such agreement she paid the $3,900; that the amount so exacted from her by Quirin was necessarily larger by $1,508 than it would have been if the defendants Clark and Heline had paid the taxes on the land during the years of their occupancy. It appears also that it was the understanding between this plaintiff and Quirin that he would assign to her the certificate of sale, and would thereby give her the opportunity to find a purchaser for the property at a price which would save her, in whole or in part, from the loss which she was sustaining. She was unable to find any purchaser who would take the land at a greater price than was bid thereon, and she gained no benefit, therefore, from such arrangement.

There is some controversy between the parties as to whether this plaintiff can rely upon any contract or arrangement between her and Quirin as being effective to create or preserve any obligation as between her and these defendants. Objection is also made to her oral testimony, because a writing was entered into between her and Quirin, and her oral testimony is contradictory to such writing. We think there was nothing in the alleged writing which rendered inadmissible her oral testimony. Whether she can predicate any right, as against these defendants, upon the personal contract and understanding entered into between her and Quirin, is a somewhat different question, which will be considered in its appropriate place.

I. We will consider first the question whether the plaintiff may oust the defendants Clark from the possession of the farm during the year of redemption. Her argument for this contention is that she alone was the "debtor," in the foreclosure suit brought by Quirin; that the Clarks, though defendants therein, were not "debtors," within the meaning of Section 4045, Code of 1897; that, under such section, only the "debtor" had the right of redemption under execution sale and the right of possession pending such year of redemption. Upon this premise she argues that she alone, as the sole mortgagor and sole "debtor," who was personally liable for the mortgage debt, became the "debtor," within the meaning of Section 4045, and

as such had the sole right of redemption and possession during the period of redemption. If this argument were accepted, it would be difficult to foresee its results or to set a limitation upon its possibilities. To draw an illustration from this record: The plaintiff herself sold to King, and obtained from him a consideration of $20,000 over and above the mortgages, *subject* to which he took it. What did King get by such purchase? Manifestly, he got a right of possession, for one thing. Did he then have a right to pay off the mortgages which he had not assumed, but to which his title was, nevertheless, *subject?* If yea, he had a right of redemption. The only possible method of redemption was to pay the mortgages. If the mortgagee had brought a foreclosure suit, would King thereby become immediately cut off, without further right of redemption or possession? An affirmative answer is what the argument of plaintiff amounts to. The right of redemption after an execution sale is only a continuation of the right of redemption that existed before the sale. The same is true of the right of possession. Under the statute, this right is attached to the "debtor's" right of redemption. In such a case, the owner of the land is a "debtor," in the constructive sense that his land has become the primary fund out of which the debt must be paid. He must, therefore, redeem his land by paying the debt, or suffer its loss. True, the plaintiff, as sole mortgagor and maker of the mortgage note, had her appropriate rights, and was entitled to protection therein. But such rights were as well defined, and presumably as well known to her, at the time she made her sale as they became afterwards. The land became the primary fund for the payment of the debt. Liability of the plaintiff became secondary to the liability of the primary fund. If she was put to any disadvantage by reason of parting with the possession of the land, it was the result solely of her own voluntary act. The deed carried to the grantee every right which the grantor had. Such was her contract. She received full consideration for it. To repudiate later the purchaser's right of possession is only an attempted repudiation of the contract for which she holds the consideration. She had a right to sell on the terms named. Her purchaser had an equal right to buy. What was true of her purchaser was equally true of the subsequent purchasers.

We hold, therefore, that the defendants Clark had a right of redemption, and with it a right of possession for one year after the execution sale. We are not holding that the plaintiff, as a surety, might not have been subrogated to such right of redemp-. tion, upon proper procedure therefor. See *Wise v. Laird*, 198 Iowa 357. But such is not the remedy prayed. The plaintiff had no need of it, because she had an agreement with the execution plaintiff for an option to purchase the certificate of sale. She did not exercise it.

In so holding, we are accepting plaintiff's theory that her payment of $3,900 to avoid a deficiency judgment was the legal equivalent of *paying* a deficiency judgment for such amount.

II. Is the plaintiff entitled to recover $1,508 as for taxes paid? We will confine our discussion on this question, for the moment, to the defendants Clark. We will assume also, for the moment, that all the delinquency of taxes resulted from their breach of obligation to pay the same. These taxes were at all times a lien upon the land. If they were paid by anyone other than the Clarks, whether by Quirin or the plaintiff herein, such payer would be entitled to impress the amount so paid as a lien upon the same land. Quirin, the mortgagee, in fact paid them, and pleaded the payment in his foreclosure suit. The decree awarded him a lien for the amount so paid, and included such amount in the final judgment. Quirin's judgment having been fully paid by the execution sale, the taxes were necessarily paid thereby. This much the plaintiff concedes; but she contends that in fact *she* paid such taxes, in that the same were necessarily included in the alleged deficiency judgment of $3,900 against her. If that be conceded, yet she had the full benefit of the decree, which made the payment a lien upon the land.

2. MORTGAGES: foreclosure: sale: inclusion of taxes: effect.

Moreover, the fact that the bid was for the full amount of the execution sale operated legally to the full extinguishment of the decree as against the Clarks. They could not have redeemed from such sale without paying such full amount. Presumably, if the decree had been $1,500 less than it was, the Clarks might have redeemed. As it was, if the Clarks had in fact redeemed, then manifestly the full item of $1,508 would

have been paid. Was the bid any less a full payment if no redemption be made? Manifestly not. When the decree was satisfied by the bid, each item included therein was paid, in legal contemplation. Quirin, the mortgagee, who paid such taxes, was presumably the proper person to recover the amount. He did recover it. Could Quirin recover them again? If not, by what right may the plaintiff recover them a second time? The theory put forward by her only substitutes her for Quirin, and assumes to subrogate her to his rights as mortgagee, to the extent of such taxes. But even so, her rights can rise no higher than his; nor can she be subrogated to any right which has already been extinguished by a payment to him.

We are further of the opinion that the private arrangement between plaintiff and Quirin, whereby she agreed to pay him $3,900, though valid as between the parties thereto, has no effect whatever upon the rights of the Clarks, as the owners in possession of the property. They were not parties to such arrangement, and knew nothing about it. The bid of the execution plaintiff, therefore, fully satisfied the decree, and fully extinguished all claims arising under the mortgage.

*3. CONTRACTS: mutuality: third parties.*

Our conclusion at this point renders it unnecessary that we consider other features of the case. If the Clarks could otherwise be held for the delinquent taxes, they could be so held only for such taxes as accrued during their ownership. A large part of the delinquent taxes accrued during the ownership of Heline. The petition claims a joint judgment against both the Clarks and Heline. She could not be entitled to such. There is nothing in the petition to indicate how much is chargeable to Heline and how much to the Clarks. There is nothing in the brief of counsel that offers us any aid on that question. In view of our announced conclusion on the larger merits of the case, we have no further occasion to pursue that inquiry.

We hold at this point that the execution bid paid the amount expended for taxes.

The order of the district court dismissing the petition is, accordingly, affirmed.—*Affirmed.*

DE GRAFF, C. J., and ALBERT and MORLING, JJ., concur.