American Commercial & Savings Bank of Davenport, Appellee, v. R. McCammond et al., Appellees; Margaret Brick et al., Appellants.

No. 40919.

September 29, 1931.

Rehearing Denied January 14, 1932.

Spence & Beard, for American Commercial & Savings Bank of Davenport, and Clyde Lesan, appellees.

Havens & Elston, for Margaret Brick, Estella Brick, Chester A. Brick, and Laura Brick, appellants.

Wilson, Brown & Wilson, for R. McCammond, appellee.

Evans, J.—The title page shows a multiplicity of defendants. The only defendants in interest are Margaret Brick, Estella Brick and Chester A. Brick. All other names may be dis-

regarded. We shall refer to these three as the defendants and appellants.

The mortgage in suit was for $20,000 and covered a farm of 200 acres. Some years before the maturity of this mortgage, and while it was in force, these defendants became joint owners of the farm by purchase and conveyance from Clyde Lesan, an intervener herein. By the conveyance from Lesan the defendants took "subject" to such mortgage. Lesan was the plaintiff's debtor and mortgagor at all times. At the time of the conveyance, and ever since he has been personally liable to the plaintiff for the payment of the mortgage debt. The mortgage by its terms pledged the rents, issues, and profits and authorized the appointment of a Receiver. Upon the maturity of the mortgage, and in default of payment thereof, the plaintiff brought a foreclosure action *in rem* against the defendants alone praying a decree *in rem* without personal judgment against the defendants, and praying also for a Receiver to collect the rents, issues, and profits. The defendants having interposed resistance to the enforcement of the pledge as to rents, issues, and profits, Lesan intervened in the action and joined with the plaintiff in its prayer on the contested issue and set up a claim of right in his own behalf that all the terms of the mortgage-pledge should be enforced so far as necessary for his protection against personal liability on the mortgage. That Lesan has a right under the terms of his conveyance to the defendants to have the mortgaged property devoted to the payment of the debt, and to the protection of himself against personal liability thereon, is quite elementary. The controversy turns wholly upon details and methods of procedure and the application of principles of equity as between grantor and grantees in such a case.

Foreclosure decree *in rem* having been entered, special execution was issued and the farm was sold thereunder on a bid of $19,000 leaving a deficiency of approximately $2300. The major purpose of the receivership prayed is to protect Lesan as far as possible against personal liability for such deficiency. One of the objections stressed by the appellants against such appointment is that the insolvency of Lesan was not shown; that therefore the plaintiff has abundant remedy for the collection of its debt. It is true that we have held that we will not award receivership to a foreclosing plaintiff unless the insolvency of

his debtor be shown. The reason for such rule is that in such a case the plaintiff has adequate remedy at law to collect personally from his debtor and no equitable reason is left why the debtor should be disturbed in the possession of his land. Such rule of equity is of our own making and is intended for the benefit of the debtor. These defendants are neither debtors nor mortgagors. On the face of the rule therefore it has no application to them. If they had assumed the mortgage and thereby had become personally liable therefor, a showing of their insolvency might have been requisite on the part of plaintiff. If solvent, the plaintiff could have recourse to their personal liability. Likewise the intervener could have the same recourse. The question of their solvency or insolvency is quite immaterial herein, either to the plaintiff or to the intervener. No personal remedy against them is available in either event.

In view of the absence of proof on the question of insolvency of Lesan, let us assume that he was, and is, in fact solvent. Is his right to protection against personal liability for the mortgage debt any less for that reason than it would be if he were insolvent? If solvent, that fact would put the plaintiff at ease and would naturally render him indifferent as to the source from which he should receive payment. But the equitable right of Lesan as against the defendants could be neither greater nor less whether he was solvent or insolvent. In either event he would be equitably entitled to protection against personal liability for the debt. In either event he would be entitled to insist that the mortgage be collected out of the resources described therein. Though the solvency of the debtor would negative the right of the *plaintiff* to collect the rents, issues, and profits, as against such debtor, it does not follow that such solvency would negative the right of the *debtor* himself to enforce his contract with his grantees by demanding that the resources of the mortgage be applied upon the mortgage debt, to the protection of the debtor against personal liability. The defendants are in court not as debtors of the plaintiff, but as mere owners of the mortgaged property and as obligees of their grantor, Lesan. We deem it clear that the question of insolvency of the debtor is not material to the issue between them and the intervener and that the rule invoked by the defendants is not available to them.

Another argument advanced by the appellants is that the

execution sale under the judgment *in rem* automatically extinguished the judgment; that therefore there is no deficiency *judgment*; that the execution sale leaves the plaintiff without any *lien* on anything or personal liability of any party. It is manifestly true that the plaintiff has no judgment and therefore has no lien. But it does have a *deficiency*. The intervener is personally liable for it and is suable therefor. The amount of such deficiency is proved without dispute in the record. The plaintiff has taken an attitude of impartiality as between the intervener and the defendants. It did not implead Lesan. It has fully reserved its cause of action against him. In one sense it is awaiting the outcome of the issues between the intervener and the defendants. The intervener can not escape his liability to the plaintiff ultimately except in so far as he may be able to discharge his liability to the plaintiff by the application of rents, issues, and profts herein. We see no materiality therefore in the fact that the plaintiff has now neither a personal *judgment*; nor a deficiency *judgment*; nor a lien. Even a deficiency *judgment* would not be a lien after execution sale. If it were essential that a foreclosing plaintiff should maintain a judgment lien in order to collect the rents, issues, and profits, through a Receiver, then he could never collect the same *after* an execution sale of the land. The foregoing presents briefly the lines of argument adopted by the appellants in support of their contention. Their argument carries the assumption that the defendants stand in the shoes of debtor and mortgagor and takes virtually no account of the rights of the intervener as against them.

The case has its novelty, and precedents are comparatively few. Nevertheless we have come very close to the material issues in two or three of our previous cases. We think it will be quite a sufficient discussion of the case to rest our decision upon these.

In Grimes v. Kelloway, 204 Iowa 1220, we had occasion to consider a kindred question and we think our holding and discussion therein are quite conclusive of the issues herein. In that case, as in this, grantors of the mortgaged land intervened in the foreclosure suit by the mortgagee. Their right of intervention was sustained and the relief prayed by them was awarded. The one distinction apparent between that case and the one at

bar was that the grantee and last owner of the land, who was named as principal defendant in the foreclosure suit, had "assumed and agreed to pay" the mortgage. He was therefore personally liable therefor and personal judgment was entered against him. His insolvency, however, was proved in that case. Such proof was apparently necessary because by his assumption, he had become the principal debtor in lieu of the mortgagor. We held expressly that the intervening grantors were entitled to demand the enforcement of the receivership clause of the mortgage for the purpose of protecting their own personal liability. In that case we quoted approvingly from the opinion of the Supreme Court of Nebraska in Philadelphia Mtg. & Tr. Co. v. Oyler, 85 N. W. 899, as follows:

"It would be, it seems to us, permissible for a mortgagor of premises afterwards conveyed to a third party, and which secured a debt upon which he was personally liable, in an action to foreclose such mortgage, and where waste or inadequacy of security is made the basis, to apply for a receiver of such premises for the purpose of having the debts satisfied out of the property pledged to their payment according to priorities, regardless of the question of his solvency and liability to meet a deficiency by reason of his personal liability; and in this case we hold that the mortgagor and grantee had such a substantial and beneficial interest in the suit by reason of their personal liability for the debt as would give them a standing in a court of equity for the purpose of applying for a receiver to take charge of and preserve the mortgaged property, and apply the income to the payment of taxes or in satisfaction of the mortgage debt, and thus lessen their liability, and save them from injury by reason of a judgment for deficiency."

In the Grimes case, Irving was the last grantee and assumptor of the mortgage and was made the principal defendant. Cudahy and Tiffany were the grantors of Irving and were themselves prior assumptors of the mortgage. Kelloway was the original mortgagor; and Smith was the original mortgagee. With this explanation of the personnel of the case, we set forth herein a few excerpts from the opinion:

"Urgent objection is proclaimed against the 'appointment of the receiver.' Such protest rests upon the alleged premises

that: First, insolvency of all the obligors has not been shown; and second, the rights of Cudahy and Tiffany cannot rise higher than those of the 'holder of the mortgage' in this respect. True, there is in the record no evidence concerning the financial responsibility of the Kelloways and Smith, but the controversy at this juncture is between Cudahy and Tiffany on the one hand and appellant on the other. These appellees (Cudahy and Tiffany) filed a petition of intervention in the 'foreclosure proceedings,' alleging the 'assumption and agreement to pay' on the part of appellant, and that, through failure of his so doing, 'judgment' is claimed (and in fact was entered) in the premises against interveners, then pleading the insufficiency of the 'security' and the 'insolvency' of the appellant, and thereupon praying, among other things, for the 'appointment of a receiver' 'to take immediate charge of the real estate and collect the rents and profits therefrom.' * * *

"Remaining, therefore, is the determination of the point as to whether or not Cudahy and Tiffany are entitled to a 'receiver,' under the exigency of the case, even if (a question which we do not decide) the plaintiffs-appellees Taylor Grimes, L. M. Grimes, and L. B. Bartholomew are not. * * *

"Cudahy and Tiffany retained an interest in the subject-matter here involved, to the extent, at least, that they can insist on appellees' paying the 'obligation' and thus relieving them of the necessity of so doing; and furthermore, these interveners have a right to ask that all the available properties pledged be applied. Stout v. Folger, 34 Iowa 71, suggests:

" ' * * * if the covenant or promise be to perform some act for the plaintiff's benefit * * the neglect to perform the act is a breach of contract, and will give an immediate right of action. * * * The authorities agree that, upon an undertaking to pay a debt due a third person, the plaintiff may maintain an action without showing that he has paid the debt.'

"Equity here has 'jurisdiction' of all the parties, and can fully protect each in his individual privileges and contractual benefits. Plaintiffs-appellees could have instituted an action at law against these grantees in said 'deed' on the covenant 'assuming and agreeing to pay,' without first 'foreclosing the mortgage.' Beeson v. Green, supra. Yet in such event, Cudahy and Tiffany, in a proper procedure involving themselves and ap-

pellant, could have insisted upon the application of the 'mortgage security;' for its existence operated for their protection, and in such litigation they could and would have been plaintiffs. Boice v. Coffeen, supra.

''Definition of 'plaintiff,' as used in said 'enabling clause,' is broad enough to include Cudahy and Tiffany as interveners in this case. Really, so far as the legal quarrel between them and appellant is concerned, they are 'plaintiffs.' If this relief is denied, the result will be the impairment to that extent of the 'assumption clause,' which, under the arrangement, was part of the consideration to be performed by appellant. Old is the maxim that, where a right exists, there is a legal remedy to enforce it. Application of this principle cannot be denied the interveners at this late date in American jurisprudence.''

We think the foregoing is quite decisive of the argument. The District Court correctly ruled the case and awarded the receivership as for the benefit of the intervener.

Its judgment is accordingly affirmed.

All Justices concur.