## McLEAN v. FEDERAL LAND BANK OF OMAHA.

### No. 12226.

Circuit Court of Appeals, Eighth Circuit.

July 2, 1942.

Rehearing Denied Aug. 17, 1942.

R. Brown, of Creston, Iowa, for appellant.

Don C. Young, of Omaha, Neb. (J. C. Pryor, of Burlington, Iowa, and Harold J. Reed, of Omaha, Neb., on the brief), for appellee.

Before STONE, SANBORN, and THOMAS, Circuit Judges.

STONE, Circuit Judge.

This is an appeal from a decree remanding to a conciliation commissioner a debtor's petition amended under Section 75, sub. s, of the Bankruptcy Act, as amended, 11 U.S. C.A. § 203, sub. s, with instructions to dismiss for want of jurisdiction because the debtor was not a "farmer", within the purview of the section, at the time his petition was filed. The debtor seeks an extension as to and possession of a farm in Iowa at a time when sale of the farm in foreclosure of a mortgage had taken place; a certificate of purchase had passed to appellee (the mortgagee) ; but the sheriff's deed had not passed because the one year period of redemption had not expired. There is no dispute in the evidentiary facts. The real controversy, here as below, is whether the evidentiary facts do or do not place appellant within the class of persons intended by Section 75, 11 U.S.C.A. § 203.

An outline of the present proceedings and the evidentiary facts as to title to this property are as follows. The land is a farm of about 242 acres in Iowa. All but about 14 acres was patented by the grandfather of petitioner in 1842. It descended to petitioner's father who died in 1926 leaving it to petitioner and a brother. While they held the land, they executed two successive mortgages—the first mortgage to the appellee and the second to Don McGiffin, a brother-in-law of petitioner. In 1932, McGiffin foreclosed this second mortgage, bought in the property, received sheriff's deed, and took possession. In April, 1940, there was a foreclosure decree of the first mortgage in the amount of $18,625.85 with interest from February 7, 1940—a total of $19,391.18. At sheriff's sale, appellee purchased for $17,391.18, leaving a deficiency against appellant of $2,000. Sheriff's certificate of purchase issued May 31, 1940. Under the law of Iowa, appellee would have been entitled to receive a deed, at the expiration of one year for redemption, on May 31, 1941. In February and March, 1941, petitioner obtained quit claim deeds from the widow and heirs of Don McGiffin, for nominal considerations. April 15, 1941 (about six weeks before expiration of the redemption year), petitioner filed his petition under Section 75. After failing to obtain sufficient acceptance of an offer of composition, petitioner filed an amended petition under 75, sub. s. The conciliation commissioner issued a notice to creditors to show cause why exemptions should not be set off and an order entered staying proceedings, continuing the debtor in possession of the remainder of the property, determining a reasonable rental, or, if necessary, appointing a trustee. Appellee filed a resistance: "alleging that debtor is a single man, that he did not file his petition in good faith but for the sole and only purpose of delaying and defrauding the Federal Land Bank of Omaha, and that the court is without jurisdiction to enter an order staying any and all proceedings against said debtor or continuing said debtor in possession of any of his alleged property, or in determining a reasonable rental therefor, for the reason the petitioner is not a farmer, and asked that the proceedings be dismissed." There was a hearing before the commissioner resulting in an order overruling the resistance. On review, the court set aside the order of the commissioner and remanded the matter with directions to dismiss the proceedings "on the ground that the court is without jurisdiction to maintain the same" because the debtor bankrupt "is not now and was not at the time of the filing of his debtor's petition a farmer within the purview of Section 75 of the Bankruptcy Act."

The evidence as to petitioner's livelihood and as to his connection with this property is as follows. At time of trial before the commissioner, petitioner was sixty-two years old. He was born and lived on the farm until the spring of 1932. From the death of his father in 1926 until McGiffin took possession in the spring of 1932, he operated the farm as part owner and as tenant of his brother who was co-owner. From the spring of 1932 to spring of 1937, he was off the farm and working "at odd jobs, mostly on farms as a laborer." In the spring of 1937, he went back on the farm (then owned by McGiffin) under a verbal arrangement whereunder petitioner was to conduct

the farming until the fall of 1939, at which time, if the income therefrom would justify it, an equal partnership arrangement between him and McGiffin as to operation of the farm was to be made for the future. Under this tentative arrangement, petitioner was advanced his living expenses by McGiffin. Petitioner had little farm equipment and no live stock. McGiffin died in May, 1939, and the arrangement came to an end before the time for a partnership had been reached. After the death of McGiffin, he stayed on the farm until November 9, 1939, under the administrator, receiving about ten dollars a week. The arrangement with the administrator is not entirely clear. At its close, the administrator settled with McLean by paying $156 and giving him 250 bushels of oats, 100 bushels of corn and 18 tons of straw. December 1, 1939, he and a Mr. Stever leased the farm until March 1, 1941, from the receiver who had taken possession under the foreclosure proceeding by appellee. Under the arrangement between him and Stever (who had farm equipment), Stever took the farm and hay land and he took the pasture, lots and buildings and lived there putting in a garden and caring for a cow and poultry which belonged to a Mrs. Thomas who lived on the farm. The receiver declined to renew the lease ending March 1, 1941, and appellant left the farm. During the month of March, 1941, he worked in a jewelry store. From April 1, 1941, until the trial, he worked and then was working as a farm hand for a Mr. Hicks.

Concisely, this evidence shows the following. Appellant was engaged in farm work during his life except for the month of March, 1941. During all of this time, except for the five years (spring, 1932 to spring, 1937) and since March, 1941, his work was on this farm. Until the death of his father in 1926, it is fairly inferable that his work there was as a member of his father's family. For six years thereafter, he was on the farm as part owner and tenant until the spring of 1932. Then he lost title until he again acquired it in February and March, 1941. From the spring of 1937 to the death of McGiffin (May 9, 1939) he operated the farm under an arrangement which provided living expenses and contemplated future partnership operation with the owner. After McGiffin's death, he was in charge under some arrangement with the administrator until he became a tenant of the receiver (for something more than a year) until he left on March 1, 1941. He

is subject to a deficiency judgment of $2,000 from the foreclosure by appellee. It is to this situation we are to apply the test of whether he is a farmer within the Act.

The definition of "farmer" in proceedings of this character is to be found in amended § 75, sub. r, Title 11 U.S.C.A. § 203, sub. r. Carlota Benitez Sampayo v. Bank of Nova Scotia, 313 U.S. 270, 61 S.Ct. 953, 85 L.Ed. 1324. This section contains two contrasting (First National Bank & Trust Co. v. Beach, 301 U.S. 435, 438, 57 S.Ct. 801, 81 L.Ed. 1206) definitions. The first is an individual "primarily bona fide personally engaged in producing products of the soil, * * * in dairy farming, the production of poultry or livestock, or the production of poultry products or livestock products in their unmanufactured state"; the second is one "the principal part of whose income is derived from any one or more of the foregoing operations." The second definition is intended to cover instances "when the receipt of income derived from farming operations would make a farmer out of some one who personally or primarily was engaged in different activities." Beach case, supra, 301 U.S. at page 438, 57 S.Ct. at page 803, 81 L.Ed. 1206. Here, appellant's entire life and labor (except one month) had been spent upon farms, so that the first definition is more applicable.

Since appellant had spent his life and labor on farms, he could properly be called a farmer if one were describing his vocation. Whether he is a "farmer" within the intendment of subsection r of the Act, as to this farm, is to be found by applying to the status of appellant the first definition in subsection r, as clarified by the purposes of the Act. This Act was a temporary measure for "the relief of hard-pressed farmers" (Carlota Benitez Sampayo v. Bank of Nova Scotia, 313 U.S. 270, 273, 61 S.Ct. 953, 954, 85 L.Ed. 1324) by affording an opportunity "for rehabilitation". Wright v. Vinton Branch of Mountain Trust Bank of Roanoke, 300 U.S. 440, 467, 57 S.Ct. 556, 81 L.Ed. 736, 112 A.L.R. 1455. The statutory means of affording this opportunity for rehabilitation were by two successive steps: First, an effort "to effect a composition or an extension of time to pay his debts" (Title 11 U.S.C.A. § 203, sub. c, through an arrangement with his creditors under jurisdiction of the court (same, § 203, subs. d to p); second, failing in efforts so to compose or extend, an adjudication in bankruptcy with a right to exemptions, a right to retain pos-

session, under the supervision and control of the court, of any part or all of the remainder of his property designated by him and a right to stay (on terms fixed by the court) of proceedings to oust him from such possession (same, § 203, sub. s). "The pervading purpose of subdivision s [§ 203, sub. s] is to accomplish this stay" (United States National Bank of Omaha v. Pamp, 8 Cir., 83 F.2d 493, 499; and see Borchard v. California Bank, 310 U.S. 311, 60 S.Ct. 957, 84 L.Ed. 1222) and to keep the farmer in possession of his farm. In re McGrew, 3 Cir., 126 F.2d 676, 678. To accomplish its purposes, the Act is to be liberally construed (Wright v. Logan, 315 U.S. 139, 141, 62 S.Ct. 508, 86 L.Ed. 745; Wright v. Union Central L. Ins. Co., 311 U.S. 273, 279, 61 S. Ct. 196, 85 L.Ed. 184; Buss v. Prudential Insurance Co. of America, 8 Cir., 126 F.2d 960, 968), and the burden is on one who seeks to dismiss the proceeding. Buss v. Prudential Ins. Co. of America, 8 Cir., 126 F.2d 960, 965.

■■ From this resume of the purposes of the Act as aiding in construction of the definition of those coming within it under subsection r, it is clear that the Act is designed to rehabilitate distressed farmers by affording them a temporary opportunity to work out of their unfortunate situations with the property (including their farms) they have at the time the petition is filed. It is not designed to aid farm hands, farm tenants, share croppers or others who may follow farming as a vocation to newly acquire and hold farm property.[1] Thus, it appears that there must be some actual connection of a petitioner with the farm besides a mere equity therein newly acquired for the purpose of taking advantage of the Act. What is sufficient to establish such connection is a matter of fact which may vary and must be determined upon consideration of the entire situation present in the particular case. See First National Bank & Trust Co. v. Beach, 301 U.S. 435, 439, 441, 57 S.Ct. 801, 81 L.Ed. 1206. Does appellant have such connection with this farm?

That the vocation of appellant was farming is clear. Sixty-two years old when this evidence was taken, appellant had been farming during his life except for one month (March, 1941). At the time he filed this petition and when he amended the petition (under 75, sub. s), he was working on a farm. With the exception of slightly over five years of his life, he had lived and worked on this farm. Of this period, about forty-seven years had been spent there with his father who owned the farm; for six years he was co-owner and tenant of the other co-owner; for about a year and a half he worked there, under McGiffin, under an arrangement designed to ripen into a partnership operation—frustrated by the death of McGiffin—for a year he was a co-tenant up to about six weeks before filing this petition. While he was co-owner, he and his brother incurred the indebtedness to appellee and to McGiffin. Because of the McGiffin indebtedness, he lost the title to the farm. Because of the indebtedness to appellee, he later became liable for a deficiency judgment of $2,000. Before the term for redemption expired on the sale under appellee's mortgage, he acquired title.

■■ The Act (Title 11 U.S.C.A. § 203, sub. n) expressly recognizes as property of the bankrupt "any equity * * * including, among others * * * the right or the equity of redemption where the period of redemption has not or had not expired * * * at the time of filing the petition." See Wright v. Logan, 315 U.S. 139, 142, 62 S.Ct. 508, 86 L.Ed. 745. Whether such right or equity exists and when it expires are to be determined from the State law where the land is located, Buss v. Prudential Ins. Co. of America, 8 Cir., 126 F.2d 960, 965.

■ The right of redemption is "property" in Iowa. Buss v. Prudential Ins. Co. of America, 8 Cir., 126 F.2d 960, 968. The law of Iowa provides that a note mortgage foreclosure "shall be by equitable proceedings." Iowa Code (1939) § 10942. It affords rights to and periods of redemption to various named parties (same, chapter 500) including the "debtor." Same, § 11774, who is the one personally liable on the mortgage indebtedness. It gives the "debtor" the right to assign his right of redemption. Same, § 11796. When the mortgaged land is sold by the debtor, a right of redemption passes to the buyer (Marx v. Clark, 201 Iowa 1219, 207 N.W. 357, 358), but the debtor still has an equitable interest (arising from his liability for a deficiency judgment) which entitles him to intervene in a foreclosure action (American Commercial &

---

[1] The situation of farm hands, etc., is cared for under another Act, the Bankhead-Jones Farm Tenant Act of July 22, 1937, 50 Stat. 522, Title 7 U.S.C.A. §§ 1001–1006.

Savings Bank of Davenport v. McCammond, 213 Iowa 957, 238 N.W. 77) and a right of subrogation (as to redemption from a first mortgage) where deed has passed under foreclosure of a second mortgage. Marx v. Clark, 201 Iowa 1219, 207 N.W. 357, 358; Wise v. Laird, 198 Iowa 357, 199 N.W. 487. It thus appears that the statute and decision law of Iowa recognize an equity in the mortgage "debtor" in relation to the property and redemption and which equity exists even where he has parted with title, willingly or through foreclosure of a junior mortgage. Also, see Equitable Life Assurance Society of United States v. Kramer, 218 Iowa 80, 253 N.W. 809.

Here, petitioner was such a debtor and had become personally liable for a deficiency of $2,000 in consequence of this mortgage foreclosure. He had lost title through foreclosure of the second mortgage. The time for redemption as to the first mortgage had not expired when his petition was filed. Before and without later acquisition of title by him, he was no stranger to this land and to this foreclosure proceeding but had equitable rights in connection therewith which the law of Iowa recognized. In acquiring title, he merely strongly added to and enlarged his rights. He was not an outsider seeking to gain the benefits of the Act as a stranger-volunteer, such as was the case in In re Ripley, D.C.W.D.Mo., 40 F. Supp. 850; In re Cole, D.C.W.D.Mich., 29 F.Supp. 382, or In re Fullagar, D.C.W.D. N.Y., 8 F.Supp. 602. The situation is more like that in Re Halbert, D.C.W.D.La., 24 F. Supp. 141.

■ The conclusion is that petitioner is a "farmer", within the Act, as to this land. Therefore, the order dismissing his petition because he was held not to be a farmer within the Act must be reversed and the case remanded for proceedings not inconsistent with this determination.

■ In connection with this hearing, appellee moved to supplement the transcript by adding certain proceedings of a State probate court in connection with acquisition of title from certain minor heirs of McGiffin. It is evident this omission was by mistake, and Rule 75(h), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, is designed to remedy such a situation.

Although this additional transcript contains nothing which could affect our determination here, we think the motion should be and it is granted.

### On Petition for Rehearing.

Appellee has filed a petition for rehearing based upon appellee's view that our opinion held (as stated by appellee) that "appellant had a right or equity of redemption prior to his acquisition of title by the quitclaim deeds from the surviving spouse and heirs at law of Don McGiffin, deceased." The supporting argument and citations (Iowa Supreme Court) are directed at showing that when title to land in Iowa passes, all right of redemption in the former owner from then existing mortgages expires.

This position of appellee arises from its conception that: "The inference of this Court's decision is to the effect that the use of the term 'debtor' gives to one who is merely personally liable the right of redemption." No such inference was intended in our opinion. The only statements in the opinion which could be in the thought of appellee had to do with the proposition of whether appellant, in acquiring the above quit claim deeds, had placed himself where he could take advantage of the Act.

After stating the purposes of the Act, the opinion continues as follows: "From this resume of the purposes of the Act as aiding in construction of the definition of those coming within it under subsection r, it is clear that the Act is designed to rehabilitate distressed farmers by affording them a temporary opportunity to work out of their unfortunate situations with the property (including their farms) they have at the time the petition is filed. It is not designed to aid farm hands, farm tenants, share croppers or others who may follow farming as a vocation to newly acquire and hold farm property.[1] Thus, it appears that there must be some actual connection of a petitioner with the farm besides a mere equity therein newly acquired for the purpose of taking advantage of the Act. What is sufficient to establish such connection is a matter of fact which may vary and must be determined upon consideration of

---

[1] The situation of farm hands, etc., is cared for under another Act, the Bankhead-Jones Farm Tenant Act of July 22, 1937, 50 Stat. 522, Title 7 U.S.C.A. §§ 1001–1006.

the entire situation present in the particular case. See First National Bank & Trust Co. v. Beach, 301 U.S. 435, 439, 441, 57 S.Ct. 801, 81 L.Ed. 1206. Does appellant have such connection with this farm?"

In determining the question thus asked, this Court examined (1) the prior connection of appellant with this farm and (2) his interests (under the law of Iowa) in connection with the farm. All of this was aimed at the proposition of whether appellant had such connection with this farm as would make him more than "an outsider seeking to gain the benefits of the Act as a stranger-volunteer" and, if so, bring him within the Act. As to his interests (under the law of Iowa) in connection with the farm, we said: "When the mortgaged land is sold by the debtor, a right of redemption passes to the buyer (Marx v. Clark, 201 Iowa 1219, 207 N. W. 357, 358), but the debtor still has an equitable interest (arising from his liability for a deficiency judgment) which entitles him to intervene in a foreclosure action (American Commercial & Savings Bank of Davenport v. McCammond, 213 Iowa 957, 238 N.W. 77) and a right of subrogation (as to redemption from a first mortgage) where deed has passed under foreclosure of a second mortgage. Marx v. Clark, 201 Iowa 1219, 207 N.W. 357, 358; Wise v. Laird, 198 Iowa 357, 199 N. W. 487. It thus appears that the statute and decision law of Iowa recognize an equity in the mortgage 'debtor' in relation to the property and redemption and which equity exists even where he has parted with title, willingly or through foreclosure of a junior mortgage. Also, see Equitable Life Assurance Society of United States v. Kramer, 218 Iowa 80, 253 N.W. 809."

We think the citations therein support the text of this quotation. We did not say that this equitable right was a right of redemption or equivalent thereto, and it obviously is not. But these decisions establish that there is some sort of right in appellant (call it what you will) which is recognized and will be enforced by the Iowa courts. We held that such right had its important part in connecting appellant with this land and in preventing him being a mere "stranger-volunteer" who could not come within the Act.

The petition for rehearing is denied.