**SWIFT v. MOBLEY, State Superintendent of Banks, et al. \***

Circuit Court of Appeals, Fifth Circuit.
October 23, 1928.

No. 5411.

Stephen C. Upson, of Athens, Ga., and Raymond Stapleton, of Elberton, Ga. (Mathilde Lumpkin Upson, of Athens, Ga., on the brief), for appellant.

William L. Erwin, of Athens, Ga. (Erwin, Erwin & Nix, of Athens, Ga., and Z. B. Rogers, of Elberton, Ga., on the brief), for appellees.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

\*Certiorari denied 49 S. Ct. —, 73 L. Ed. —.

BRYAN, Circuit Judge. This is an appeal by Thomas M. Swift, Jr., from an order adjudging him an involuntary bankrupt. The acts of bankruptcy alleged, and proved without controversy, were that Swift, within four months prior to the filing by the creditors of their petition, had transferred his property to his wife and his father with intent to create a preference in their favor, and to hinder, delay, and defraud his creditors. The only defense to the petition was that Swift was either a wage-earner or chiefly engaged in farming or tillage of the soil, and therefore was exempt under section 4b of the Bankruptcy Act, 11 USCA § 22(b), from being adjudged an involuntary bankrupt.

The principal creditor was the Elberton Loan & Savings Bank, which held notes signed or indorsed by Swift during the years 1923 to 1925, while he was engaged in the mercantile business at Elberton, Ga. From September, 1925, until February, 1927, Swift was employed on a salary, first with the Nunnally Company of Atlanta, and then as bookkeeper for the Elberton Cotton Mill. On February 6, 1927, he gave up his employment with the cotton mill on account of his eyes. Thereafter, until the petition in bankruptcy was filed against him, he lived at his home, about 2 miles from Elberton. This home consisted of a tract of 30 acres, only 12 or 15 acres of which were cleared for cultivation. Swift claims that in March of 1927 he reserved 4 or 5 acres on which to raise chickens. The remainder he let to a tenant, to be planted in cotton and corn, reserving as rent one-fourth of the cotton and one-fourth of the corn, out of which he received $35 for the cotton and one-fourth of about 30 bushels of corn. He had 25 or 30 chickens, and in April got 280 more from an incubator. In May 230 of the chickens were lost in a fire. The transfers to his wife and father, which are attacked as preferential and fraudulent, were made on April 8, 1927, and the petition in bankruptcy was filed on May 11, 1927.

Appellant was not exempt as a wage-earner. He was in the nonexempt class of merchants when the debts were incurred, and had ceased to be exempt before the acts of bankruptcy were committed. The evidence shows quite conclusively that appellant, after he ceased his work as bookkeeper and until the acts of bankruptcy were committed, was not actively engaged in any occupation. The raising of chickens about his home place was on too small a scale to constitute an occupation or means of living, as was also the farming by his tenant. The evidence does not support the conclusion that he was engaged

chiefly in farming or tillage of the soil. As appellant was neither a wage-earner nor a farmer at the time the acts of bankruptcy were committed, it becomes unnecessary to decide the question, raised in argument by appellees, whether he should be adjudged an involuntary bankrupt on the ground that he was engaged in a nonexempt occupation as of the date when his debts were contracted.

The order appealed from is affirmed.