**In re BEACH.** *

**FIRST NAT. BANK & TRUST CO. OF BRIDGEPORT, CONN., v. BEACH.**

No. 26.

Circuit Court of Appeals, Second Circuit.

Nov. 9, 1936.

*Writ of certiorari granted 57 S. Ct. 513, 81 L. Ed. —.

---◆---

SWAN, Circuit Judge, dissenting.

Greenstein & Simons, of Bridgeport, Conn. (Sydney P. Simons, of Bridgeport, Conn., of counsel), for appellant.

Arthur B. Weiss, of Bridgeport, Conn., for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from an order dismissing a petition of the debtor filed under section 75 (c) of the Bankruptcy Act (11 U. S.C.A. § 203 (c). On November 14, 1935, the debtor filed the petition, alleging that he was a farmer, and asking that he be given an opportunity to compromise or extend his debts. On the same day the judge approved the petition and referred the cause to the proper conciliation commissioner; so the matter stood on November twenty-first, when the First National Bank of Bridgeport, a creditor and mortgagee, moved the court that the proceeding be dismissed, because the debtor was not in fact a farmer, as defined by section 75 (r), as amended (11 U.S.C.A. § 203 (r). On December second the judge entered an order granting this motion, and the debtor appealed with leave of this court.

The facts were stipulated as follows. Beach was the owner of a farm of about one hundred and ninety acres, with five houses and a barn on it, where he had lived from his birth, occupying one of the houses with his wife and children, as his homestead. He had been engaged in mercantile pursuits until the year 1930, but in that year as the result of financial losses he began to devote the greater part of his time to work on the place. The land had an apple orchard of two hundred trees, which in 1931 yielded fifteen hundred bushels of apples; but from 1933 to 1935 he got little from his crop because of a blight. He had a few pear trees; and he cultivated a large garden of about one acre, planting and raising all kinds of vegetables, fruits and flowers, more than enough to provide for his family. He raised hay and sold it; repaired the houses, cleaned out one of the wells, laid several miles of stone walls and two miles of barbed wire fence; carted stone from time to time to rebuild his fences; and raised and sold potatoes. He was engaged primarily in raising poultry and eggs, having two hundred chickens in 1933, and about fifty from 1935 to the time of the trial. He kept three sheep for food; one horse, for carting and hauling; and a miscellaneous assortment of farm tools none purchased since 1921. His total income per annum from 1930 to 1935 was $4,000, of which $2,200 was derived from renting three-quarters of the farm to various persons for grazing and cultivation. One of these tenants conducted a dairy and bred, grazed and milked a herd of cows. Beach earned $200 from the sale of poultry and eggs, $75 from the sale of hay; and $25 from the sale of vegetables and flowers. The rentals from other real estate, not claimed to be farm property, made up the remainder of his income, $1,500.

In spite of the fact that he gave most of his time to work about his farm, we think that Beach was not "primarily * * * personally engaged" in farming. He would not have been so regarded before the enactment of section 75, and we see no reason to impute another meaning to such nearly identical language as it contains. Swift v. Mobley, 28 F.(2d) 610 (C.C.A.5); In re Spengler (D.C.) 238 F. 862; In re McMurray (D.C.) 8 F.Supp. 449; In re Weis (D.C.) 10 F.Supp. 227. Again, it was also settled that a person who lived on income derived from a farm was not a farmer under section 4 (b), as amended (11 U.S.C.A. § 22 (b). In re Glass, 53 F. (2d) 844 (C.C.A.7); In re Matson (D.C.) 123 F. 743; In re Driver (D.C.) 252 F. 956; In re Brown (D.C.) 284 F. 899. But section 75 (r), as amended (11 U.S.C.A. § 203 (r), certainly meant to broaden the class, by contrasting those "personally bona fide engaged" in husbandry with those who merely drew their principal income from it. It seems to us either that "personally" must mean "without any assistants," or that the second clause includes those who live by rents from the farm operations of tenants. We reject the first alternative; a man is no less a farmer because he hires laborers, either regularly or sporadically; he is "personally" engaged in farming, though, being in possession, he rides his acres and superintends the manual labors of others. On the other hand it is certainly a great abuse of words to call that man a farmer, who merely lives upon the yield of farm lands; nor can we see that this is much bettered by confining the clause to leases in which the tenant pays in kind. Nevertheless, notwithstanding the violence done to ordinary usage, we cannot escape the literal meaning of the words chosen. Such a result does not, moreover, violate the probabilities as much as one might at first blush suppose. The occasion for the legislation was the collapse of farm values, following upon the depression, and indeed preceding it. There was a large class who had rented their farms to others, but who were as dependent upon the yield as though they worked the land themselves as they usually had done originally. These people were ordinarily in the same case as those who actually farmed; it is not unreasonable to ascribe to Congress an intention to succor them with the rest. Mortgagees may indeed be outside the class, even though the interest be in fact paid out of the earnings of the mortgaged farm; we have not such a case before us. Nor need we hold that the lessor of a farm is within the clause, if the lessee pays the rent from other sources than his own farming. But when the debtor's principal income in fact comes out of the land, we find it impossible to give reasonable effect to the language used, unless we call him a farmer. No circuit court of appeals has passed upon the point; the only district court opinion which does so is In re Hilliker, 9 F.Supp. 948. The judge there appears to have taken the other view, though it was not necessary to the decision; but we cannot agree that the scope which he

leaves to the clause, fills out the full measure of its meaning.

Order reversed.

SWAN, Circuit Judge (dissenting).

I am unable to concur in my brothers' construction of the statute.