908

## In re WRIGHT'S ESTATE.
### No. 5611.

District Court, W. D. Louisiana, Monroe Division.

Dec. 19, 1936.

Robert Layton and J. B. Dawkins, both of Monroe, La., for estate of Mrs. Eugenia S. Wright.

McHenry, Lamkin & Lamkin, of Monroe, La., and Dufour, St. Paul, Levy & Miceli, of New Orleans, La., for creditors.

Travis Oliver, Jr., of Monroe, La., Conciliation Com'r. Ouachita Parish.

DAWKINS, District Judge.

This is a proceeding for relief under the provisions of section 75 of the Bankruptcy Act, as amended, 11 U.S.C.A. § 203, applying to farmers. Petitioners are the heirs and legal representatives of Mrs. Eugenia S. Wright, who prior to her death on December 1, 1934, resided in Monroe, La. At the first hearing before the Conciliation Commissioner, certain creditors opposed the proceeding on the ground that the deceased was not a farmer within the meaning of that term, as defined in the act. Evidence was taken and the Commissioner found in favor of the opponents, holding the deceased not to have been a farmer. The petitioners have brought the record before this court for review.

In the schedules filed with the petition, assets are listed of the total value of $215,247.85 and debts in the sum of $127,514.81. The assets are made up as follows:

(1). Dabbs' Bend Plantation, 1374 acres situated in Richland Parish, consisting of farming and woodland, total value $21,000.00. ⅓ int. of deceased... $ 7,000.00
(2). White Island Plantation, 1210 acres situated in Richland Parish, total value $21,000.00. ⅓ int. of deceased... $ 7,000.00
(3). Wynn Island Plantation, 360 acres, situated in Richland Parish, value not given. ⅓ int. of deceased
(4). Sneed Plantation, 240 acres, total value $12,000.00. ⅓ interest of deceased .................................. $ 4,000.00
(5). Bossier Parish: Lands, 1280 acres, mostly woodland, value $12,800.00. ⅓ interest of deceased.................. $ 4,266.66
(6). Ouachita Parish property, ⅓ interest of deceased, consisting of 7 separate tracts, ranging from 4 to 280 acres, all of which is listed as woodland except one piece of 40.12 acres, known as the Nichols place, described as a farm and having a total value of $3946.66. ⅓ interest of deceased...... $ 3,946.66
    Lands situated in Ouachita Parish, which were wholly owned, as follows:
(1). A tract of approximately 241 acres partly within the City of Monroe, listed as farm and woodland.......... $ 12,000.00
(2). 3 Acre farm............................. $ 150.00
(3). 40 acres of woodland.................. $ 400.00
(4). 50 acre farm, 40 of which is cultivated $ 2,000.00
(5). Magenta Plantation, 1587.90 acres, farm and woodland.................... $ 85,000.00
(6). Oak Grove Plantation, 314 acres, woodland ............................... $ 3,144.20
Property in Laurens County, Georgia:
(a). ⅛ interest in 1100 acres woodland.... $ 880.00
(b). 1⁄20 interest in Anna Tucker Place.... $ 600.00
Property in Webb County, Texas:
(a). 5 acres................................. $ 35.00
(b). Lot ................................... $ 15.00
⅛ interest in mineral rights in Baker Place, acreage not given mineral.. $ 1,000.00
87½% interest in rights in land in Plaquemine Parish...................... $ 500.00
Total real estate other than city property $131,937.32
Property in the City of Monroe, improved and unimproved, of a total value of $ 70,650.00
There was also listed a ⅓ interest in the estate of Frank F. Stubbs, but no value given.
Personal property, including household furniture, livestock, farming implements, cotton-seed, corn and hay... $ 4,167.00
Choses in action:
Stocks, securities, etc........................ $ 6,250.00

    Total .................................... $213,004.52
The indebtedness scheduled was as follows:
Taxes ........................................ $ 2,868.72
Secured claims ............................. $122,180.23
Unsecured claims .......................... $ 2,465.85

    Total indebtedness....................... $127,514.80

Of the secured indebtedness, slightly over $55,000 is protected by mortgages upon farm property, while some $65,000 is secured by mortgages upon city property and personal collateral.

This proceeding was precipitated by a foreclosure started by a creditor holding an indebtedness in excess of $42,000, resting upon the most valuable part of the farm property.

The deceased was somewhat advanced in years, not in good health, and her affairs, for approximately ten years before her death, were managed by her son, Robert Layton, one of the petitioners here. She conducted no business in the city of Monroe other than the collection of her revenues from the property situated therein, consisting of rentals on city property, the largest item of which was from a store building on the lot valued above at $45,000, rented to J. C. Penney Company on a yearly basis of $6,000, payable $500 monthly. The proceeds of this lease were applied monthly to the discharge of a mortgage indebtedness upon the building. She also received some royalties from mineral leases.

Petitioner, Robert Layton, who is an attorney, as the agent or manager for his mother, devoted about one-half of his time to her affairs, four-fifths of which were employed in looking after the farms or plantations, and the other one-fifth in attending to her city property. The three principal farm properties were "Magenta" plantation, consisting of 1587.90 acres, 1,000 acres of which was subject to cultivation, but only about 700 actually cultivated; "Hollywood" plantation, 241.07 acres, the most of which (the exact acreage not shown) was cultivated; and the "Perkins" place, consisting of 50 acres, 40 of which were cultivated. All of these farm properties had the usual improvements, consisting of tenant houses, barns, etc. There were shown to be upon them 17 head of horses and mules, 2 hogs, 41 head of cattle, 1 farm tractor, 1 truck, 3 wagons, hay press, rakes, plows, harness, and other farm equipment. There were a total of 11 half-hands, 21 one-fourth hands, one cash tenant and a number of wage hands in 1935; in 1934, 15 half-hands, 18 one-fourth hands, 1 cash tenant and also a number of wage hands. The operations for prior years were on about the same basis.

If the debtor had any business or occupation other than the collection of her rentals and revenues from her town property, mineral rights, etc., it was that of farming. It is true that she did not actually cultivate the land herself, but did so through tenants or share hands mainly.

The gross revenues from farming operations and from nonfarming sources varied from year to year—sometimes being about equal and other years the latter exceeded those of the farms. The question, as I see it, is as to whether she was "primarily, bona fide, personally engaged in producing products of the soil. * * *" In my opinion it was not necessary for her to reside on any one of her farm properties; nor was she required to personally superintend the same, but could, as she did, do so through an agent or manager. This did not cause the operation to cease to be her own if it was for her personal benefit and she furnished the means of carrying it on. Nor did the fact that she farmed the properties on the usual terms employed by farmers or planters, of one-half, where she furnished the work stock, farming implements, seed, etc., or on the basis of one-third or one-fourth, where these were supplied by the tenants, cause it to cease to be an operation by her, within the meaning of the law. She financed the tenants and farming operations, determined in general when and what crops should be planted, sold and marketed the same, and settled with the hands for their shares.

My conclusion is that her chief and only business or occupation was that of farming or tillage of the soil within the meaning of section 75 of the Bankruptcy Act, as amended. In re Brais (Brais v. Martin et al.) 15 F.(2d) 693 (C.C.A.); In re Tyler (D.C.) 284 F. 152.

The case will, therefore, be remanded to the Conciliation Commissioner for further proceedings under the statute.

Proper decree should be presented.