## CARLOTA BENITEZ SAMPAYO *v.* BANK OF NOVA SCOTIA.

No. 90. Submitted April 10, 1941.—Decided May 12, 1941.

*Messrs. Fernando B. Fornaris* and *Elmer McClain* submitted for petitioner.

*Messrs. Walter L. Newsom, Jr.* and *J. Henri Brown* submitted for respondent.

Mr. Justice Murphy delivered the opinion of the Court.

To arrange a composition or an extension as a farmer-debtor, petitioner filed a petition in October, 1938, under § 75 of the Bankruptcy Act (47 Stat. 1467, 1470; as amended 48 Stat. 925; *Id.*, 1289; 49 Stat. 246; *Id.*, 942). Failing to secure the assents required by § 75 (g), petitioner amended her petition in November, 1938, to proceed under § 75 (s). Respondent then moved to dismiss the petition on the ground that petitioner was not a "farmer" and therefore was not entitled to the relief

afforded by § 75 (s). After a hearing, the District Court sustained the motion.

The Circuit Court of Appeals affirmed. It held that the formula for determining whether petitioner was a farmer was to be found in § 1 (17) of the Chandler Act of 1938 (52 Stat. 840, 841), and that petitioner could not be regarded as a farmer within its terms. 109 F. 2d 743, on rehearing, 109 F. 2d 750. Because the decision was substantially inconsistent with Order 50 (9) of the General Orders in Bankruptcy (305 U. S. 677, 710), we granted certiorari.[1] 311 U. S. 623.

The ultimate question, of course, is whether petitioner may proceed under § 75 (s) as a farmer-debtor, but for present purposes the problem is to select the definition of "farmer" which is applicable to persons petitioning for relief under § 75.

The Bankruptcy Act contains two definitions of the term "farmer." Section 1 (17) of the Chandler revision provides: "'Farmer' shall mean an individual personally engaged in farming or tillage of the soil, and shall include an individual personally engaged in dairy farming or in the productions of poultry, livestock, or poultry or livestock products in their unmanufactured state, if the principal part of his income is derived from any one or more of such operations."

Section 75 (r), as amended in 1935 (49 Stat. 246) provides: "For the purposes of this section, section 4 (b), and section 74, the term 'farmer' includes not only an individual who is primarily bona fide personally engaged in producing products of the soil, but also any individual who is primarily bona fide personally engaged in dairy farming, the production of poultry or livestock, or the

---

[1] Insofar as material here, Order 50 (9) reads: ". . . The petition shall show to the satisfaction of the district court that the decedent at the time of his death was a farmer within the meaning of subdivision (r) of section 75. . . ."

production of poultry products or livestock products in their unmanufactured state, or the principal part of whose income is derived from any one or more of the foregoing operations, and includes the personal representative of a deceased farmer. . . ."

Starting with the premise that only one of the definitions can stand, respondent contends that § 1 (17) is an implicit repeal of § 75 (r). To support the contention, respondent points to the obsolete reference in § 75 (r) to § 74, and to a statement in a committee report which is said to indicate that Congress intended the definition in § 1 (17) to measure the applicability of § 4 (b) to persons who claim to be farmers.[2]

The argument ignores the plain import of § 75 (r). The meaning of the phrase "for the purposes of this section" is hardly open to question. Obviously, it is neither impossible nor necessarily inconsistent to prescribe one definition for a particular section or sections and another for the balance of the Act. Nor is the applicability of § 75 (r) to proceedings under § 75 seriously placed in doubt because the former section refers to a section which no longer exists under that number and to a section which now may be governed by § 1 (17). The only question here is whether § 75 (r) or § 1 (17) is applicable to § 75.

Section 75, with immaterial differences, first appeared in the distressed-debtor legislation of 1933. 47 Stat.

---

[2] The latter argument, upon which we express no opinion, is grounded on the statement in H. Rep. No. 1409, 75th Cong., 1st Sess., p. 6, which runs: "The amendment of May 5 (sic), 1935 . . . extends the meaning of the term 'farmer.' . . . Correspondingly, section 4 of the act is amended by substituting the phrase 'a farmer' for the language 'a person engaged chiefly in farming or the tillage of the soil.' Pursuant to this purpose of Congress to expand the meaning of the term, it would seem advisable to formulate a new definition and to include it in section 1 as clause (17)."

1467, 1470–1473. Designed for a particular purpose, the relief of hard-pressed farmers, it was regarded as a special and temporary enactment. See § 75 (c); compare S. Rep. No. 1215, 73d Cong., 2d Sess., p. 3; H. Rep. No. 1898, 73d Cong., 2d Sess., p. 2. In 1938 its time limit was extended to 1940. 52 Stat. 84, 85. At that time a special committee held extensive hearings on a proposal to make § 75 a permanent part of the Bankruptcy Act, and finally concluded that the section should be continued only as temporary legislation. Hearings before Special Subcommittee on Bankruptcy of the Committee on the Judiciary, 75th Congress, 2d and 3d Sessions; see also H. Rep. No. 1833, 75th Cong., 3d Sess., p. 2; S. Rep. No. 899, 75th Cong., 1st Sess.; H. Rep. No. 1658, 76th Cong., 3d Sess., p. 2. Naturally enough, legislation drafted for such a purpose carried its own test for determining the persons to whom it should apply.

When the proposed revision of 1938 was before a Senate Committee, Representative Chandler, the proponent of the bill, stated: "We did not touch [§ 75] and it is not affected by this Act." Discussing the alterations in existing statutes worked by the new act, the House Report laconically observed that there was "no change" in § 75. H. Rep. No. 1409, 75th Cong., 1st Sess., p. 144. Somewhat less briefly, the Senate Report stated: "Section 75 relates to agricultural compositions and extensions. These expire by limitation and are, therefore, not covered by the bill." S. Rep. No. 1916, 75th Cong., 3d Sess., p. 18.

The Chandler Act, a careful and comprehensive revision of bankruptcy legislation, was the product of several years of thoughtful study. See 81 Cong. Rec. 8646–8649. One of its avowed purposes was to clarify or remove inconsistent and overlapping provisions. See H. Rep. No. 1409, 75th Cong., 1st Sess., pp. 1–3. As a part of this comprehensive revision, numerous definitions were

overhauled or inserted for the first time. Among the latter was § 1 (17). See H. Rep. No. 1409, *supra*, p. 6. But § 75 (r) also was left in the Act, and, as already indicated, its existence was not unknown to the revisors. Its very presence in the statute after the revision is persuasive evidence that § 1 (17) was not intended to govern proceedings under § 75.

We conclude that petitioner's activities must be tested by the definition in § 75 (r) rather than by the one in § 1 (17). The judgment is reversed and the cause is remanded to the Circuit Court of Appeals for consideration of other questions in light of our decision.

*Reversed.*

Mr. Justice Stone did not participate in the consideration or decision of this case.