**WILLIAMS v. GREAT SOUTHERN LIFE INS. CO. et al.**

**No. 9894.**

Circuit Court of Appeals, Fifth Circuit.

Dec. 13, 1941.

Rehearing Denied Jan. 12, 1942.

See, also, Dimmitt v. Great Southern Life Ins. Co., 5 Cir., 124 F.2d 40.

E. Byron Singleton, of Amarillo, Tex., for appellant.

E. H. Foster and Warren M. Sparks, both of Amarillo, Tex., Fred R. Switzer, of Houston, Tex., and Binford Arney and C. C. Small, both of Austin, Tex., for appellees.

Before FOSTER and HUTCHESON, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge.

The question in this case is as to whether the appellant is a farmer within the meaning of sub-section r of Section 75 of the Bankruptcy Law, 11 U.S.C.A. § 203, sub. r.

There is no dispute as to the facts. Williams, among other properties, owned an undivided three-fourths interest in 6,961 acres, and a one-half interest in 1,195 acres, or a total of 8156 acres of land, comprising a ranch; the other undivided interest belonged to one Dimmitt, who has a similar appeal before this court. The ranch was under lease for a yearly money rental of $2,-453.10, out of which repairs and expenses for the upkeep of the place were paid. Appellant's proportionate share of rents and royalties of approximately $2,400 per year from a mineral lease to Philips Petroleum Company upon this ranch were not paid to him, but were retained by the lessee under a trust agreement to protect it against a prior mortgage on the property.

He also owned three other farms, the first embracing 254 acres, situated in Texas County, Oklahoma; the second consisting of five or six hundred acres in Sherman County, Texas, and the third comprising about five hundred acres in Potter County, Texas, situated some seven or eight miles from Amarillo, Texas, where he lived. All three were worked by tenants on a share crop basis of one-third, and produced mainly wheat. Williams resided and kept an office in the city of Amarillo, but had no other business. He visited the Potter County farm from one to three times a week, and daily during harvesting season; the other two from one to two times a month, but in harvesting season he would go there several times a week to see that the crops were duly harvested, and his share was delivered to the elevator. In 1940, he had to order the tenant on one of these places to return and go over a portion of the land which had been insufficiently harvested. In 1938, he furnished seed wheat, gasoline and oil for planting, and receiving one-half of the crop on the Potter County farm. He discussed and advised with his tenants as to the best method of plowing and cultivating the land so as to prevent erosion from wind and rain, and stated that he stood ready to help in any way that he could to save time and expenses in operations. On the Sherman County farm, he made "distinct" arrangements with his tenant for pasturing of milk cows on a part of the land. He had to take charge of the Oklahoma farm in 1940, and finish the crop because the tenant walked off. The crop was harvested through hired labor on the basis of one-half to the man who gathered it. Appellant personally distributed some poison to kill grasshoppers. As stated, he has no other occupation and no income except that derived from these farms and the ranch which he owns in indivision with Dimmitt.

The conditions and relations of appellant to these properties have existed for several years.

The Supreme Court in Benitez Sampayo v. Bank of Nova Scotia, 313 U.S. 270, 61 S. Ct. 953, 85 L.Ed. 1324, has decided that the definition of a farmer in sub-section r of Section 75 must prevail over that of Section 1(17) or the Chandler Act, 11 U.S.C.A. § 1(17), in proceedings affecting farmers. Hence, if under the facts of this case, Williams falls in either category of that subsection, he is entitled to proceed, and the decision below should be reversed. Sub-section r reads: "For the purposes of this section, section 22(b) and section 202, the term 'farmer' includes not only an individual who is primarily bona fide personally engaged in producing products of the soil, but also any individual who is primarily bona fide personally engaged in dairy farming, the production of poultry or livestock, or the production of poultry products or livestock products in their unmanufactured state, or the principal part of whose income is derived from any one or more of the foregoing operations, and includes the personal representative of a deceased farmer; and a farmer shall be deemed a resident of any county in which such operations occur."

The language of this provision does not say specifically that the claimant to relief must actually till the soil with his own hands or labor. He may be "primarily bona fide personally engaged" in any one of those operations, if that is his business or occupation, or if the major part of his time and attention are given to its supervision and direction, although the actual work be performed by day labor, those employed by the month, commonly known as "wage hands", or by share croppers, who cultivate the land for a share of the crops. Congress undoubtedly knew that a large part of farming operations are carried on in this manner, that is, without the owner or farmer doing the man-

ual labor himself. This Act was an emergency measure and intended to give relief to that class of citizens who were engaged in agricultural pursuits as a livelihood or business, and to restrict it to those small operators who themselves till the soil would exclude, as we know from common knowledge, a very large segment of the farming population. If the doing of physical labor were the test, the owner of farm properties, no matter how extensive, could by the simple expedient of going upon and cultivating a few acres with his own labor, bring under the protection and administration of the Bankruptcy Court thousands of acres, even though ninety-five per cent were cultivated by share croppers, lessees paying money rentals, or what not. Once the status as a farmer is fixed, all of his property wherever situated, and regardless of its nature, is drawn under the jurisdiction of the Bankruptcy Court in a proceeding of this kind. Sub-section n, Sec. 75. Again, if through illness or misfortune, the owner became physically unable to perform farm labor, he would cease to be a farmer through no fault of his own, because he could not till the soil. Neither do we think that the operator can acquire or lose the status of a farmer by the fact alone of establishing his residence upon or moving from the farm lands. All of these matters are but circumstances tending to support or dispute the fact that he is or is not pursuing the occupation as his chief livelihood, or deriving the principal part of his income therefrom. Even the discovery of oil or other minerals upon the farm in sufficient quantities to exceed returns from products of the soil, would not serve to convert the farmer into an oil operator, so long as he continued unchanged his relation to the operations of the farm. Each case must be determined according to its own facts.

█ The case of Shyvers v. Security-First National Bank, 108 F.2d 611 by the Ninth Circuit, relied on by the lower court in the present case was an extreme instance, where the owner lived in England with a husband engaged in another and distinct business. She did nothing but receive the rents collected by her attorneys in this country who handled the property as her correspondents and agents. The conclusion which we reach here is no different in principle from that case. We hold as it does, that the claimant's business must be that of a farmer, as said by the Supreme Court in First National Bank and Trust Company v. Beach, 301 U.S. 435, 57 S.Ct.

801, 803, 81 L.Ed. 1206, with the "major portion of his time" devoted to one of the activities named in the law; or the principal part of his income must be derived from such an operation which he conducts in the manner above described, even though he does not devote the greater part of his time thereto. He does not become a farmer by merely receiving rents or revenues without more, where he has another business in which he is primarily engaged, although such rents and income may exceed that of such other business or occupation.

█ In the present case, we think the facts show that all of Williams' business activities were devoted to his farming, and that his entire income was derived from farming operations.

For the reasons assigned, the judgment below is reversed, and the cause remanded for further proceedings not inconsistent with the views herein expressed.