## BENITEZ v. BANK OF NOVA SCOTIA.

### No. 3487.

Circuit Court of Appeals, First Circuit.

Jan. 30, 1942.

Francisco Capô Pagân, Ponce, P. R., for appellant.

Brown, Gonzâlez & Newsom, of San Juan, P. R., for appellee.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAGRUDER, Circuit Judge.

This case is back with us again, upon remand from the Supreme Court, Carlota Benitez Sampayo v. Bank of Nova Scotia, 1941, 313 U.S. 270, 61 S.Ct. 953, 85 L.Ed. 1324. Our earlier opinion is found in, 1940, 109 F.2d 743. For related litigation, see Benitez v. Bank of Nova Scotia, 1 Cir., 1940, 110 F.2d 169; Benitez v. Bank of Nova Scotia, 1 Cir., 1940, 116 F.2d 359; People of Puerto Rico v. Bank of Nova Scotia, 1 Cir., 1940, 116 F.2d 379, certiorari denied, Oct. 13, 1941, 62 S.Ct. 56, 86 L. Ed. —; Benitez v. Bank of Nova Scotia, 125 F.2d 519, decided by us this day.

Appellant seeks reversal of an order of the District Court of the United States for Puerto Rico dismissing her farmer-debtor petition under § 75 of the Bankruptcy Act. The controlling issue is whether appellant is a "farmer" within the definition of that word contained in subsection r of § 75, 11 U.S.C.A. § 203, sub. r.

Appellant was a member of the "Comunidad" Jose J. Benitez e Hijos, which had large holdings of land on the island of Vieques, Puerto Rico, used for growing sugar cane and for pasturage. The Comunidad also owned cattle, buildings, agricultural equipment, and held the capital stock of the Benitez Sugar Company, a corporation. The latter corporation owned a sugar factory, agricultural land, a large number of livestock, trucks, equipment, buildings, a railroad with locomotives and rolling stock, all on the island of Vieques,

and devoted to the growing of sugar cane and the manufacture of raw sugar and molasses, and the transportation, marketing, and sale of such manufactured products. The corporation also extensively financed the growing of sugar cane by independent "colonos" or farmers under grinding contracts calling for the processing of such sugar cane at the corporation's sugar factory. Since 1917 the operations of the Comunidad and the Benitez Sugar Company had been conducted as a single and integrated enterprise devoted to the growing of sugar cane and the manufacture of that cane and cane grown by independent farmers into raw cane sugar and molasses, and to the sale and transportation of the sugar and molasses.

The Comunidad had been constituted by contract between the widower and the heirs of Carlota Sampayo Guzman in 1917, and by successive renewals extended to July 30, 1935. On July 1, 1933, the Bank of Nova Scotia, under the terms of a crop loan agreement with the Comunidad, took possession of the properties and operated them for the account of the Comunidad and the Sugar Company, applying the net proceeds to the repayment of the crop loans. When the contract regulating the Comunidad expired on July 30, 1935, no partition or liquidation of the business was had, but the Bank continued the operation of the business as theretofore, until a receiver took over.

On October 20, 1936, the Bank of Nova Scotia filed in the District Court of the United States for Puerto Rico a bill in equity against the Benitez Sugar Company, and various persons, including the present appellant, individually and as members of the aforesaid Comunidad, seeking foreclosure of certain securities and of a crop lien in satisfaction of various joint and several obligations of the corporation and the Comunidad.

Upon the filing of the bill for foreclosure a receiver was appointed. The receiver took possession of the properties of the integrated enterprise and operated the same under orders of the court. A final decree was rendered on August 22, 1938, in favor of the Bank. The decree adjudged that the Comunidad and the Sugar Company

were jointly and severally indebted to the Bank for $673,569.82 with interest; that the members of the Comunidad were individually liable in proportion to their respective participations therein, that of the appellant being a one-twelfth interest; that the members of the Comunidad, in proportion to their respective liabilities, and the Benitez Sugar Company, must on or before September 1, 1938, pay to the Bank the said sum with interest, in default of which a special master was directed to sell at public auction the various pledged and mortgaged properties. Provision was made for an eventual deficiency judgment.

After entry of the equity decree just mentioned, appellant on October 13, 1938, one hour before the foreclosure sale pursuant to said decree, filed in the district court her petition as a farmer-debtor for composition or extension under § 75 of the National Bankruptcy Act, 11 U.S.C.A. § 203. She did this in the belief that the pendency of this petition, would operate, under § 75, subsections *o* and p, automatically to stay all further proceedings in the equity case and would, under § 75, subsection n, draw into the exclusive jurisdiction of the bankruptcy court all the real and personal property of the Comunidad, and of the corporation,[1] or at least her undivided fractional interest in this specific property. In addition to her relationship to the farming operations of the Comunidad, appellant based her claim to be a "farmer" on the fact that at her home in the city of Ponce, Puerto Rico, she had for several years engaged in raising and selling poultry and eggs.

The debtor's schedule of debts, filed with her petition, listed her pro rata liability for all the debts of the "integrated enterprise"—the Comunidad and Benitez Sugar Company; also a debt of $500 to her personal attorneys in this litigation, and a trivial debt on account of the poultry business. The schedule of the debtor's property listed all the specific real and personal property of the Comunidad and the Sugar Company, in which she claimed a one-twelfth interest. There was also listed an unspecified sum alleged to be owing the debtor by the "integrated enterprise," the amount of which could only be determined

---

[1] As to the corporation, appellant's theory apparently was that the corporate fiction should be disregarded and the corporate property considered as in substance that of the Comunidad, since the corpora-tion as a wholly owned subsidiary of the Comunidad was merely an agency or instrumentality of the Comunidad in the conduct of the integrated enterprise.

upon an accounting. In addition, petitioner listed certain personal property wholly owned by her—household effects, $1,850, chickens and pigeons, together with lofts, poultry houses, supplies, etc., $1,199.

The petition was presented ex parte, and on the same day the acting judge of the bankruptcy court issued an order approving it as properly filed under § 75, and referred the same to a Conciliation Commissioner. In due course, the debtor filed her inventory and proposal for extension.

Having failed to obtain from creditors the requisite assents to her proposal for extension, the debtor on November 30, 1938, amended her petition and asked to be adjudged a bankrupt under § 75, subsection s. The debtor further asked that her property be appraised, her exemptions set aside, and "that she be allowed to retain possession or be placed in possession of all of the remainder of her property" under the conditions provided in said subsection s.

On December 1, 1938, the Bank of Nova Scotia as a creditor filed a motion to dismiss the petition under § 75 on the grounds that the petitioner was not a "farmer"; that the petition was not filed in good faith but for the purpose of interfering with the pending equity proceedings; and that the proposal for extension was impracticable and was not presented in good faith.

█ The debtor objects that § 75 contains no provision for such a motion to dismiss. This is true but not important. The pro forma order of the court, on the day the petition was filed, approving the same as having been properly filed under § 75, does not preclude the court at a later stage of the proceedings from taking note of a possible lack of jurisdiction, on its own motion, even without a motion by an interested party. See Davis v. Shackleford, 8 Cir., 1937, 91 F.2d 148; McLaughlin Land & Livestock Co. v. Bank of America National Trust & Savings Ass'n, 9 Cir., 1941, 122 F.2d 193.

The district court held a hearing on the jurisdictional issues, after due notice to the debtor. On January 3, 1939, the court rendered an opinion, filed findings of fact and conclusions of law, and decreed that the petition of the debtor be dismissed with costs. Appeal was duly taken from this decree.

When the case was here before, appellant filed a petition for correction of the record so as to bring before us the full transcript of the hearing before the district court on the motion to dismiss. We denied the petition (109 F.2d 743, at page 750), and appellant insists that she was aggrieved thereby. But the purpose of getting before us the full transcript of the hearing was to show that the district judge made certain rulings beyond the scope of the hearing as he had repeatedly delimited it during the course of the proceedings. Particularly appellant objected to the fact that one of the grounds upon which the court below rested its decree of dismissal was lack of good faith on the debtor's part, whereas in the course of the hearing the court had specifically stated that the only question to be determined was whether the debtor was a "farmer" within the meaning of § 75. Even if we had allowed the enlargement of the record as requested, our conclusion would not in the slightest degree have been affected, and therefore we denied the petition for correction of the record. We rested our affirmance solely on the ground that appellant was not a farmer within the meaning of the Act. Further, we expressly ruled that appellant's farmer-debtor petition could not properly be dismissed, upon the facts here appearing, on the ground of lack of good faith on the debtor's part, citing John Hancock Mutual Life Insurance Co. v. Bartels, 1939, 308 U.S. 180, 60 S.Ct. 221, 84 L.Ed. 176, and we adhere to that ruling.

In our earlier opinion we held that the applicable definition of "farmer" was that contained in § 1(17) of the Bankruptcy Act, as amended by the Chandler Act, 52 Stat. 841; and we were clear that under that definition the debtor, on her own testimony, failed to qualify as a "farmer." It turned out that we were mistaken in supposing that the new definition of "farmer" in the Chandler Act was intended to supersede the earlier definition of that word in § 75, sub. r. On certiorari, the Supreme Court held that the debtor's activities must be tested by the definition in § 75, sub. r; and therefore our judgment was reversed and the case was remanded to this court for consideration of other questions in the light of the Supreme Court's decision. Carlota Benitez Sampayo v. Bank of Nova Scotia, 1941, 313 U.S. 270, 61 S.Ct. 953, 85 L.Ed. 1324.

We are now called upon to review the record again, to determine whether appellant is a farmer under the definition con-

528

tained in § 75, sub. r. In our earlier opinion we expressly refrained from deciding this question, 109 F.2d 743, 751.

Under that definition,

" * * * the term 'farmer' includes not only an individual who is primarily bona fide personally engaged in producing products of the soil, but also any individual who is primarily bona fide personally engaged in dairy farming, the production of poultry or livestock, or the production of poultry products or livestock products in their unmanufactured state, or the principal part of whose income is derived from any one or more of the foregoing operations, and includes the personal representative of a deceased farmer; and a farmer shall be deemed a resident of any county in which such operations occur."

Is the debtor a "farmer" by virtue of her interest in the single and integrated business of the Comunidad and the corporation described above?

The Comunidad was undoubtedly engaged in farming operations. But was it "primarily" engaged in such operations? Treating the wholly owned subsidiary corporation as merely an agency or instrumentality of the Comunidad, appellee urges that the growing of sugar cane was merely incidental to the business of manufacturing sugar and molasses; that the integrated enterprise conducted by the Comunidad was chiefly engaged in manufacturing, transportation, banking and marketing. See In re Brown, 9 Cir., 1918, 253 F. 357; In re Knight, D.C.Conn.1934, 9 F.Supp. 502. The principal part of the income of the integrated enterprise came, apparently, not from the production and sale of sugar cane, but from the manufacture and sale of raw cane sugar and molasses, and from the grinding of sugar cane grown by the independent farmers financed by the corporation.

■ If it is true that the Comunidad was not primarily engaged in farming operations and did not derive the principal part of its income therefrom, appellant could not, in any view, qualify as a farmer by virtue of her interest in the Comunidad. This theory of the case was not, however, considered by the court below, which made no finding that the Comunidad was not primarily engaged in farming operations. The facts bearing on this issue, including the details of the relationship between the Comunidad and the cor-

poration and the relative importance of the various operations of the Comunidad and the corporation, are not clearly enough developed in the record to warrant us in undertaking to rule on the point as a matter of law in the absence of findings by the district court focused on the issue as to the Comunidad's primary occupation. Since the case must be remanded to the district court for further proceedings, for reasons which we shall indicate subsequently, there will be a further opportunity to take evidence on the point, if the parties are so advised, and specific findings may be made thereon.

But assuming that the Comunidad was primarily engaged in farming operations, it does not follow that appellant is a farmer by virtue of her interest in the Comunidad.

■ The district court found that appellant was not "personally engaged" in the farming operations of the Comunidad on the island of Vieques. This was a finding of fact, which we must accept unless clearly erroneous.

■ "Personally" normally implies that the activities are performed in person, not by representative or substitute. No doubt one may be "personally engaged" in farming without setting one's hand to the plow, where one directs the physical labor of hired hands. Williams v. Great Southern Life Insurance Co., 5 Cir., December 13, 1941, 124 F.2d 38. Probably the personal participation in the farming operations may be even more remote, as where the owner of the farm exercises general supervision and control through an agent or overseer who is in immediate charge of the hired hands. Cf. In re Wright's Estate, D.C.W.D.La.1936, 17 F.Supp. 908; Baxter v. Savings Bank of Utica, 5 Cir., 1937, 92 F.2d 404. And if the owner has acquired the status of farmer through long years of personal participation in farming operations, he does not lose that status though his personal activities in connection with the farm have been reduced to a minimum through the infirmities of old age or illness. See In re Brais, 7 Cir., 1926, 15 F.2d 693; In re Glick, 7 Cir., 1928, 26 F.2d 398; In re Wright's Estate, D.C.W. D.La.1936, 17 F.Supp. 908. Nor is it conclusive against his status as farmer that the owner no longer lives on the farm upon which the operations are being conducted. See In re Cox, D.C.S.D.Ill.1935, 9 F.Supp. 244; Williams v. Great Southern

Life Insurance Co., 5 Cir., December 13, 1941, 124 F.2d 38. All the facts and circumstances must be taken into account.

■ In the present case appellant was a party to the community contract which designated her father as general manager, but she was a housewife living with her husband in the city of Ponce, Puerto Rico, and had no personal participation, by way of supervision or otherwise, in the farming operations of the Comunidad. In fact, she testified that the limit of her intervention was to receive her share of the profits. She had not been a farmer prior to inheriting a one-twelfth interest in the farming property upon the death of her mother; and thereafter, she became and remained a wholly dormant partner in the Comunidad enterprise. The district court was clearly warranted on the evidence in finding that she was not "personally engaged" in these farming operations; indeed, to find otherwise would be in effect to strike the word "personally" out of the statute.

Appellant contends, however, that even if she has not been "personally engaged" in the farming operations of the Comunidad, she nevertheless qualifies as a farmer under the alternative clause in § 75, sub. r, because the principal part of her income was derived from the Comunidad's farming operations. (We assume, without deciding, that the principal part of her income was in fact so derived; the district court made no specific finding on this point.) There is a dictum in accord with appellant's contention in Louisville Joint Stock Land Bank v. Radford, 1935, 295 U.S. 555, 599, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106, but this dictum had to do with the somewhat different phraseology found in the earlier version of § 75, sub. r (47 Stat. 1473), prior to its amendment in 1935 (49 Stat. 246, 11 U.S.C.A. § 203, sub. r. In In Re Beach, 2 Cir., 1936, 86 F.2d 88, there is also a dictum that under the amended § 75, sub. r a person may be a

farmer if the principal part of his income is derived from farming operations, even though he is not personally engaged in such operations.[2] It is significant that the Supreme Court, on certiorari, did not adopt this dictum, but put its affirmance on the ground that the debtor "must be held, when the facts are viewed in combination, to have been 'personally' and 'primarily' engaged in farming operations." First National Bank & Trust Co. v. Beach, 1937, 301 U.S. 435, 439, 57 S.Ct. 801, 803, 81 L. Ed. 1206.

■■ In Shyvers v. Security-First National Bank, 9 Cir., 1939, 108 F.2d 611, 126 A.L.R. 674, certiorari denied, 1940, 309 U. S. 668, 60 S.Ct. 608, 84 L.Ed. 1015, the court considered at length the meaning of the phrase "or the principal part of whose income is derived from any one or more of the foregoing operations." The court said (108 F.2d at pages 612, 613, 126 A.L. R. 674):

"Next, it is necessary to consider whether or not the appellant is a 'farmer' under the second portion of the definition, as one 'the principal part of whose income is derived from any one or more of the foregoing operations.'

"It should be noted in particular that the Act does not define a farmer as one whose principal income is derived from farm properties; but the definition instead refers to 'the foregoing operations'.

"What are the 'foregoing operations'? An examination of the statute will disclose that each 'foregoing operation' is meticulously required to be a personal one. We conclude that to come within this subdivision, the debtor must personally be engaged in farming. It is not enough to own farm lands which he or she leases to others who operate them, while the debtor resides across seas. And this appears to be the very spirit of the law, which was enacted during a period of profound depression among the farmers of this country,

---

[2] We think the statement is a dictum because on the facts recited the debtor was undoubtedly personally engaged to some extent in farming operations. In the view of the circuit court of appeals, however, he was not "primarily" so engaged and hence did not come within the first part of the definition. This is clear from the following sentence in the opinion (86 F.2d 88, at page 89): "In spite of the fact that he gave most of his time to work about his farm, we think that Beach was not 'pri-

marily * * * personally engaged' in farming." Therefore the court had to rely on the latter part of the definition with reference to the source of the principal part of the debtor's income. We entirely agree, as we state later on in this opinion, that one personally engaged in farming operations may be a farmer within the meaning of § 75 sub. r, even though he is not "primarily" so engaged, provided the principal part of his income is derived from such operations.

the Act itself providing that it is one of emergency.

"Appellant argues that to give the subdivision this construction in effect nullifies the second part of the definition, to-wit: 'or the principal part of whose income is derived from any one or more of the foregoing operations.' The argument is that anyone whose major income is derived from 'personal farming operations' would of necessity be a 'farmer' under the first part of the definition. It is urged that Congress must have intended by the second part just quoted to expand the class of persons who would be considered 'farmers' under the Act to apply to non-farming landlords deriving the major portion of their income from farm rentals. True, Congress must have intended the second part of the definition to enlarge the class over that specifically included in the first part of the definition. But it does not follow that it intended the enlarged class to include one who is not at all personally engaged in farming. Prior to the adoption of Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, many courts had held that a person who carried on a business aside from his farm ceased to be a 'farmer'. We think that the purpose of the statute was to prevent these outside additional personal operations or pursuits from defeating a debtor's status as a 'farmer', provided the debtor's principal income continued to come from his personal farming operations."

The foregoing interpretation of § 75, sub. r, has been accepted in several other cases, and we take it to be correct. Williams v. Great Southern Life Insurance Co., 5 Cir., December 13, 1941, 124 F.2d 38; In re Olson, D.C.N.D.Iowa 1937, 21 F. Supp. 504, 508; In re Davis, D.C.N.D.Iowa 1938, 22 F. Supp. 12; In re Joyce, D.C. W.D.La.1941, 36 F.Supp. 113. See In re Horner, 7 Cir., 1939, 104 F.2d 600, 602; In re Hilliker, D.C.S.D.Cal.1935, 9 F.Supp. 948. In Leonard v. Bennett, 9 Cir., 1940, 116 F.2d 128, the court did not repudiate the interpretation of § 75, sub. r which it had previously laid down in the Shyvers case, but distinguished that case on the facts. The debtor in Leonard v. Bennett had sometime prior to the filing of his petition undoubtedly been engaged primarily and personally in farming. Due to the pressure of debt he had been obliged temporarily to leave his farm in order to engage in other activities to support his family. The court quite correctly said (116 F.2d at page 135): "If actual and literal engagement in farming were required of the petitioner at the very moment that he invokes the assistance of the act, in the sense that he then must have a plow in his hand, the aim of the Congress would be rendered unavailing in numerous instances where it was intended to apply and afford relief." We have no quarrel with the court's conclusion that, in the circumstances disclosed, the debtor maintained his status as a farmer.

■ It follows, therefore, that even if the principal part of appellant's income has been derived from farming operations of the Comunidad, she is not thereby qualified as a "farmer" within the definition because she has not been "personally" engaged in such operations.

There remains to be considered the alternative claim of appellant that she is a "farmer" by virtue of her small poultry business conducted at her home in Ponce, Puerto Rico.

Appellant is married and lives with her husband. She testified that whenever she needed money she got it from him; that "When he has money I spend whatever I want, and when he hasn't I spend as little as possible"; that in general she receives from him over $200 a month for everything, including household expenses. About three years before her present petition under § 75 was filed, she started with six pairs of pigeons purchased from the States. Later she bought about 90 chickens. She started the raising of poultry because she liked it, "and then it turned out to be a good business and I decided to carry it on as a business." At the time of the hearing she had about 110 chickens and over 200 pigeons. She sells squabs, pigeons, chickens and eggs. She "got about $50 or $60 monthly, altogether, as profits"; considering the small scale of her operations and investment in poultry raising it is doubtful whether she meant net profits. It does not appear how much time she devotes to these activities.

There is no claim that the debtor receives the principal part of her income from her poultry business. She qualifies as a farmer, however, if she is "primarily bona fide personally engaged" in the production of poultry. The district court found that she carried on this business "personally."

■ The further question of fact is whether she is "primarily" engaged in the production of poultry. Unfortunately the district court made no finding on this issue, but stated a conclusion of law as follows: "If the debtor be a farmer, as defined in the Act, with respect to her poultry business, she is not insolvent or unable to pay her debts with respect thereto as they mature." In this the district court proceeded on an erroneous view of the law. If the debtor is a farmer with respect to her poultry business, the insolvency required by § 75, sub. c, is general insolvency, not insolvency as to any particular segregated farming operation. See In re Brais, 7 Cir., 1926, 15 F.2d 693, where the farmer became insolvent by reason of having borrowed large sums of money to advance to a son who engaged unsuccessfully in the coal mining business.

■ We would have been disposed to uphold a finding on the present record that appellant was not shown to have been "primarily" engaged in the production of poultry. "Primarily" means basically, or in such manner as to be of first importance or of principal concern. The small scale of the operations, the fact that the debtor embarked upon the business more or less as an avocation or a hobby rather than as a chief means of livelihood, the trivial amount of her indebtedness arising from the poultry business as compared with her other debts—these and other factors would warrant a finding that the poultry business was not appellant's primary concern. Cf. Swift v. Mobley, 5 Cir., 1928, 28 F.2d 610; Powers v. Silberman, 3 Cir., 1925, 3 F.2d 802; In re Macklem, D.C.Md.1927, 22 F.2d 426. However, it is the function of the trial court to draw the inference of fact and in the absence of a finding by that court on the point, we hesitate to rule on the evidence as a matter of law that appellant is not "primarily" engaged in the production of poultry. The case will therefore have to go back for proper findings.

■ Appellant further contends, upon the assumption that she qualifies as a farmer under § 75, sub. r, and that her farmer-debtor petition was improperly dismissed, that we should in reversing this judgment of dismissal direct the district court to enter an order vacating and annulling the foreclosure sale of the property of the Comunidad and of the corporation under the equity decree. See Naylor v. Cantley, 8 Cir., 1938, 96 F.2d 761. Her theory is that under § 75, subsections o and p, the filing of her farmer-debtor petition automatically stayed all further proceedings in the equity case. Cf. Kalb v. Feuerstein, 1940, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370. Perhaps this contention need not be passed upon by us at this stage. We may say, however, that we see no reason to doubt the correctness of our decision in Benitez v. Bank of Nova Scotia, 110 F.2d 169. There we held that the filing of an individual petition under § 74, 11 U.S.C.A. § 202, by another member of this same Comunidad did not draw into the exclusive jurisdiction of the bankruptcy court the properties of the Comunidad or the Benitez Sugar Company, nor did the bankruptcy court ipso facto acquire jurisdiction of an undivided interest of the debtor-appellant in specific property owned by the Comunidad. The Comunidad, we thought, was to be assimilated to a partnership for purposes of the Bankruptcy Act. Since a partnership creditor who holds a mortgage or pledge of specific partnership property does not lose his right to enforce the lien by appropriate proceedings merely because one of the partners has filed an individual petition in bankruptcy, we concluded that the pendency of the individual petition under § 74 did not deprive the equity court of power to proceed with the suit to foreclose the property of the Comunidad at the instance of a Comunidad creditor. We think the reasoning of that case is equally applicable to an individual petition under § 75.

■ "The object of section 75 is to save and protect the farmer's home and farm." Sen.Rep. No. 1045, 76th Cong., 1st Sess.(1939) p. 2. The creditors are kept at bay and the farmer is allowed for a limited period to continue in operation of his farm under specified conditions. Where the farm is operated by a partnership, it would seem clear that a petition under § 75 should be filed by the partnership (as provided by paragraph 4 of subsection s, 49 Stat. 945), if the object is to continue the farm in operation and to hold off partnership creditors from resorting to firm assets for payment of firm debts. An individual member of a partnership, even of a dissolved partnership, is not entitled to be put into exclusive possession of a fractional part of specific partnership property prior to a partnership liquidation and accounting and the application of firm property to the pay-

ment of firm debts. The other members of the partnership have an interest in insisting upon such application of the partnership property, in order that they may be relieved of their individual liability for firm debts payable out of their separate estates. This partnership liquidation and accounting cannot take place in the bankruptcy court when all it has before it is an individual petition by one member of the partnership. What appellant is seeking here would result in a tangle of confusions from the standpoint of bankruptcy administration, which could not have been within the contemplation of the Congress when it enacted § 75.

The decree of the District Court is vacated and the case is remanded to that court for further proceedings not inconsistent with this opinion.