In re JORDAN.

No. 314.

District Court, D. Nebraska, Chadron Division.

Feb. 20, 1943.

M. O. Cunningham, of Omaha, Neb., and George B. Clark, of Chambers, Neb., for the debtor.

Wm. W. Graham, of Omaha, Neb., for Federal Land Bank of Omaha.

Truman W. Morsman and Edgar M. Morsman, III, both of Omaha, Neb., for Stock Yards Nat. Bank.

DELEHANT, District Judge.

The debtor, in a proceeding under Section 75 of the Bankruptcy Act, 11 U.S.C.A. § 203, has filed objections and exceptions to the Report and Recommendations of the Supervising Conciliation Commissioner which approves the allowance of the joint motion of the secured creditors for the dismissal of the proceeding on the ground that the petitioning debtor is not a farmer, within the definition of Section 75, sub. r. The issue thus tendered has been presented to the court after due notice.

The commissioner has found the relevant facts; and upon a careful analysis of the transcripts of testimony of the debtor taken on two occasions, the court is persuaded that his narration of them is abundantly supported.

Essentially these are the facts. The debtor, an unmarried man, about 67 years of age, was reared, and spent his mature life, in Cherry County, Nebraska. He owns the land involved in the action consisting of several thousand acres in separate tracts or ranches suitable chiefly for the grazing of cattle and horses and the production and havesting of hay. He acquired it in relatively small parcels and over a long period of years. In the aggregate it is capable of pasturing as many as 1,200 head of cattle; and about half of it is subject to utilization as hay land. It is heavily mortgaged and the liens are in the course of foreclosure. Up to about 1934 the debtor personally operated the ranches as a unit and upon a large scale. At that time by reason of financial difficulties he began sharply to curtail his holdings in cattle, and since 1938 has had no cattle. He lost his remaining cattle at that time through chattel mortgage foreclosures. Thereafter and until March, 1941, he employed the land for the production of hay, selling between 600 and 800 tons of hay annually from the property. In 1941 judgment creditors in certain personal judgments against him sued out executions which were levied on his lands and, in the face of their imminent sale for the satisfaction of the judgments and to enable him to raise money wherewith to settle the judgments, he leased the lands on March 24, 1941, by written lease for the sum of $4,000 in cash, which was paid in advance, for the period beginning March 24, 1941, and ending May 1, 1942. In 1942 he extended the lease for one year, or until May 1, 1943, for $4,000 in cash which he collected on March 4, 1942, and at the same time he granted the lessees an option, conditioned on his continued ownership and leasing of the land, to renew the lease until May 1, 1944, for a like cash rental. He reserved from the operation of the lease an old store building located on one of the ranch tracts which he uses chiefly for the storage of his old furniture and minor items of personal property. After leasing the lands, he rented a furnished room in the county seat town of Valentine and removed to, and now lives at, that place, although he occasionally sleeps in the old store building, especially when he is doing any repair work on improvements on the land. He has no equipment for farming or ranching except two horses and some old machinery, including a mower, a sweep and a hay rake long unused and of dubious utility. He actually has no occupation or employment, and merely leases the ranch lands, and by collecting the rentals and paying nothing on the taxes and heavy mortgage debt, lives easily enough.

It should be noted that the debtor states that since leaving the property, he has planted about a thousand trees on the land and has done some work in the painting of buildings upon it, though the extent of the latter operation is testified to in a very indefinite and unsatisfactory manner, and the court is left under the impression that any such work is an after-thought oriented to the pendency of this case. The fences, wells and windmills on the lands, must, by the lease, be kept in repair by the lessees.

The debtor professes to intend to resume after May 1, 1943, the personal operation of the land, and meanwhile to restock the place and repair the improvements. But those claims are quite incredible, even if they be relevant to the instant issue. He discloses no possibility of vindicating them. Their probability, even their credibility, is of a common pattern with an answer made by him in his examination before the local conciliation commissioner. To question 161 as to his age, he replied, "Well, I am around 67, but I feel I am good to conduct this ranch for twenty-five or thirty years yet anyway, all due to right living. If you live right, you live to be plenty old enough." A manifest and consistent want of frankness and candor characterizes the bearing of the debtor throughout both of his reported oral examinations.

Upon the facts found, the supervising conciliation commissioner concluded that the debtor, at the time of the filing of his petition was not a farmer, within the definition of Section 75, sub. r, and recommended dismissal of the proceeding. The court agrees with that conclusion.

■ ■ Recognizing and applying the rule that the petitioner's status as a farmer in each case must be determined upon the basis of the aggregate facts of the individual case, First National Bank & Trust Co. v. Beach, 301 U.S. 435, 57 S.Ct. 801, 81 L.Ed. 1206, the court is, nevertheless, wholly unable to distinguish the facts presently analyzed from those which controlled the decision in Mulligan v. Federal Land Bank, 8 Cir., 129 F.2d 438; which arose in this district. There is no essential difference either in the duration of the withdrawal by the parties from their admitted earlier status as farmers, or in the compelling motives for such separation. In the Mulligan case the period of separation was about three years, here between one year and two years. In the Mulligan case, as the circuit court's opinion indicates, ill health (as the district court files show induced by advancing age, and as the same files reveal, with a complication of financial involvement), prompted the leasing; here, financial disaster with the undoubted additional incentive of age impelled the debtor's withdrawal from ranching. The relation of landlord and tenant between the owner and operator in the present action is even more positive and unquestionable than it was in the Mulligan case.

And the circuit court's opinion in the Mulligan case is manifestly in harmony with the great weight of authority throughout the various circuits. Shyvers v. Security First National Bank, 9 Cir., 108 F. 2d 611, 126 A.L.R. 674, certiorari denied, 309 U.S. 668, 60 S.Ct. 608, 84 L.Ed. 1015; In re Iden, D.C., 35 F.Supp. 1020; Iden v. New York Life Ins. Co., 2 Cir., 116 F.2d 277; In re Joyce, D.C., 36 F.Supp. 113; Williams v. Great Southern Life Insurance Co., 5 Cir., 124 F.2d 38; Dimmitt v. Great Southern Life Insurance Co., 5 Cir., 124 F.2d 40; Benitez v. Bank of Nova Scotia, 1 Cir., 125 F.2d 523; In re McGrew, 3 Cir., 126 F.2d 676; Perry v. Baumann, 9 Cir., 128 F.2d 727; Kaslovitz v. Reid, 10 Cir., 128 F.2d 1017; In re Chaney, D.C., 39 F. Supp. 696. Touching the Shyvers case, supra, it may be acknowledged that its facts disclose an extreme degree of detachment from farming operations by the owner, but its logical construction of Section 75, sub. r, approved in the Mulligan case is clearly correct and applicable here.

■ The court has not overlooked the admitted retention by the debtor of an old store building on one of the ranch properties for the storage of furniture and other items and his occasional lodging there. But like reservation of space in the dwelling house was noted in the Mulligan case, accompanied by the housing by the debtor of some chickens on her farm which she rented. In any event just as residence elsewhere than on the farm where his operations occur does not prevent one from being a farmer, so residence upon a farm— if residence there be conceded—does not make him a farmer. Sherwood v. Kitcher 2 Cir., 86 F.2d 750; Williams v. Great Southern Life Insurance Company, 5 Cir., 124 F.2d 38.

■ Likewise, the court has not neglected at all the professed, but altogether unlikely, purpose of the debtor to resume his status as a farmer or rancher at some future date. That purpose is not considered by the court actually to exist as a matured resolution. Besides, the critical time as of which the occupational status of a petitioning debtor is to be tested is, beyond question, the date of the filing of the petition. And then the debtor was certainly not a farmer.

This case is not comparable in its facts to First National Bank & Trust Co. v. Beach, supra, where the debtor was an actual farmer of a material portion of his

land; or to McLean v. Federal Land Bank, 8 Cir., 130 F.2d 123, in which the debtor was an actual working farmer of the particular farm involved and had an interest in the title to it; or to In re Moser, 9 Cir., 95 F.2d 944, where the debtor owners of a ranch though residing elsewhere, actually operated the farming features of the ranch, whose ranch house was leased to tenants, and derived from such operation the principal part of their income; or to In re Puhler, D.C., 42 F.Supp. 886, where aged debtors owning farm lands which they had long farmed had been compelled, while retaining their residence on the farm to limit their farm work to the handling of live stock, meanwhile renting the crop land to tenants.

In other reported cases which need not be discussed conclusions have been reached which are undoubtedly at variance with the results at which the court has arrived. But they seem not to reflect either the prevailing or the more reasonable application of Section 75, sub. r.

■ The Frazier-Lemke Act, 11 U.S.C. A. § 203, was adopted for the relief of farmers, not for the relief of farms, nor even for the preservation of farms in their then current ownership. Even the liberal definition of the term "farmer" in the present text of Section 75, sub. r, which allows its application upon the basis of the source of "the principal part of" the "income" of the person under scrutiny, specifies that the determinative income shall be derived not from a farm or from farms, but rather from "the foregoing operations". And "the foregoing operations" are defined as "producing products of the soil, * * * dairy farming, the production of poultry or livestock, or the production of poultry products or livestock products in their unmanufactured state". The debtor here is engaged in no such "operations".

Therefore, an order is being entered denying the debtor's motion for an order of adjudication and reference upon his amended petition under Section 75, sub. s, 11 U.S. C.A. § 203, sub. s; and approving and adopting the report and recommendations of the Supervising Conciliation Commissioner and sustaining the secured creditors' joint petition to dismiss and dismissing this proceeding.

Exception is allowed the debtor.