**BENITEZ et al. v. UNITED STATES et al.**

No. 3768.

Circuit Court of Appeals, First Circuit.

March 29, 1944.

Carlota Benitez Sampayo, pro se.

J. Octavio Seix, pro se.

Norman M. Littell, Asst. Atty. Gen., and Wilma C. Martin and Vernon L. Wilkinson, Attys., Department of Justice, both of Washington, D. C., for the United States.

Henri Brown, of San Juan, P. R., for Bank of Nova Scotia.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAGRUDER, Circuit Judge.

This is a consolidated appeal from three judgments entered by the court below in the course of a condemnation proceeding.

On November 12, 1941, the United States, pursuant to the request of the Acting Secretary of the Navy, filed a petition for condemnation of land on the Island of Vieques, Puerto Rico, for immediate public use for security of fleet anchorage. The petition named as defendants numerous persons having or claiming interests in the six parcels to be taken. Among those so joined as defendants were Carlota Benitez Sampayo, and her husband J. Oc-tavio Seix, on account of her claim to an undivided interest in parcels 1, 4, and 5, Juan Angel Tio and his wife, who were described as purported owners of these three parcels, and the Bank of Nova Scotia which was described as the holder of a purchase money mortgage thereon.

The District Court, on the same day that the petition was filed, entered an ex parte judgment on the declaration of taking which accompanied the petition, as provided by the Act of February 26, 1931, 46 Stat. 1421, 40 U.S.C.A. § 258a et seq. Later, on March 23, 1942, the court made findings of fact and conclusions of law, holding that Carlota Benitez Sampayo and her husband had no interest in the property, and entered judgment dismissing their claims. Thereafter, on September 8, 1942, the court entered its final judgment condemning the described properties to the public use of the United States, fixing the reasonable market value of the condemned properties, and allotting compensation among those found entitled thereto. These three judgments, entered on November 12, 1941, March 23, 1942, and September 8, 1942, respectively, are the ones now under review.

The only appellants are Carlota Benitez Sampayo and her husband. The former is the real party in interest, the latter being conceded to be merely a nominal party. Hereafter, when speaking of appellant, we mean to refer to Carlota Benitez Sampayo.

Parcels 1, 4 and 5 had formed part of the holdings of the Comunidad Jose J. Benitez e Hijos, in which appellant had a small fractional interest. The complicated affairs of this Comunidad have been before this court in many cases over the past five years. One not familiar with the background of litigation would perhaps find it difficult to unravel the tangled skein of argument and assertion contained in appellant's amended answer, covering 40 pages of the present record, and in her 225 pages of brief and reply brief.

The Comunidad had large holdings of land on the Island of Vieques, Puerto Rico, used for growing sugar cane and for pasturage. It also owned cattle, buildings, agricultural equipment, and held the capital stock of the Benitez Sugar Company, a corporation. The latter corporation owned a sugar factory, agricultural land, a large number of livestock, trucks, equipment, buildings, a railroad with locomotives and rolling stock, all on the Island of Vieques.

and devoted to the growing of sugar cane and the manufacture of raw sugar and molasses, and the transportation, marketing and sale of such manufactured products. The corporation also extensively financed the growing of sugar cane by independent "colonos", or farmers, under grinding contracts calling for the processing of such sugar cane at the corporation's sugar factory. Since 1917 the operations of the Comunidad and the Benitez Sugar Company had been conducted as a single and integrated enterprise devoted to the growing of sugar cane and the manufacture of that sugar cane and cane grown by independent farmers into raw cane sugar and molasses, and to the sale and transportation of the sugar and molasses.

The Comunidad had been constituted by contract between the widower and the heirs of Carlota Sampayo Guzman in 1917 and by successive renewals extended to July 30, 1935. In the course of business the Comunidad and the Benitez Sugar Company executed certain bearer notes secured by mortgages of real estate. These notes were pledged to the Bank of Nova Scotia as security for loans. On July 1, 1933, the Bank of Nova Scotia under the terms of a crop loan agreement with the Comunidad took possession of the properties and operated them for the account of the Comunidad and the Sugar Company, applying the net proceeds to the repayment of the crop loans. When the contract regulating the Comunidad expired on July 30, 1935, no partition or liquidation of the business was had, but the Bank continued the operation of the business as theretofore, until a receiver took over.

On October 20, 1936, the Bank of Nova Scotia filed in the District Court of the United States for Puerto Rico a bill in equity against the Benitez Sugar Company, and various persons, including the present appellant, individually and as members of the aforesaid Comunidad, seeking foreclosure of the aforesaid pledged notes and of a crop lien in satisfaction of various joint and several obligations of the corporation and the Comunidad.

Upon the filing of the bill for foreclosure a receiver was appointed. The receiver took possession of the properties of the integrated enterprise and operated the same under orders of the court. A final decree was entered on August 22, 1938, in favor of the Bank. The decree adjudged that the Comunidad and the Sugar Company were jointly and severally indebted to the Bank for $673,569.82 with interest; that the members of the Comunidad were individually liable in proportion to their respective participation therein, that of the appellant being a one-twelfth interest; that the members of the Comunidad in proportion to their respective liabilities, and the Benitez Sugar Company, must on or before September 1, 1938, pay to the Bank the said sum with interest, in default of which a special master was directed to sell at public auction the pledged notes and other securities. Provision was made for an eventual deficiency judgment.

Appellant's untimely appeal from this decree was dismissed by us in Benitez v. Bank of Nova Scotia, 1940, 109 F.2d 743. This decree was affirmed by us in an appeal by another member of the Comunidad in Benitez v. Bank of Nova Scotia, 1940, 116 F.2d 359. It was also upheld by us, as against attempted collateral attack, in an appeal by a third member of the Comunidad in Ferrer v. Bank of Nova Scotia, 1943, 135 F.2d 41.

After the entry of the equity decree of August 22, 1938, appellant on October 13, 1938, one hour before the foreclosure sale pursuant to said decree, filed in the District Court her petition as a farmer-debtor for composition or extension under § 75 of the National Bankruptcy Act, 11 U.S.C.A. § 203. In addition to her relationship to the farming operations of the Comunidad appellant based her claim to be a "farmer" on the fact that at her home in the city of Ponce, Puerto Rico, she had for several years engaged in raising and selling poultry and eggs. This farmer-debtor petition has had a checkered history, as to which much will need to be said throughout the course of this opinion.

The debtor's schedule of debts filed with her farmer-debtor petition listed her pro rata liability for all the debts of the integrated enterprise, the Comunidad and the Benitez Sugar Company, also a debt of $500 to her personal attorneys, and a trivial debt on account of the poultry business. The schedule of the debtor's properties listed all the specific real and personal property of the Comunidad and the Sugar Company, in which she claimed a one-twelfth interest. There was also listed an unspecified sum alleged to be owing the debtor by the integrated enterprise, the amount of which could only be determined

on an accounting. In addition petitioner listed certain personal property wholly owned by her—household effects, $1,850, chickens and pigeons, together with lofts, poultry houses, supplies, etc., $1,199.

The petition was presented ex parte, and on the same day the acting judge of the bankruptcy court issued an order approving it as properly filed under § 75, and referred the same to a conciliation commissioner. In due course the debtor filed her inventory and proposal for extension. Having failed to obtain from creditors the requisite assents to her proposal for extension, the debtor on November 30, 1938, amended her petition and asked to be adjudged a bankrupt under § 75, subsection s. The debtor further asked that her property be appraised, her exemptions set aside, and "that she be allowed to retain possession or be placed in possession of all of the remainder of her property" under the conditions provided in said subsection s.

On December 1, 1938, the Bank of Nova Scotia as a creditor filed a motion to dismiss the petition under § 75 on the ground, among others, that the petitioner was not a "farmer". This motion raised a jurisdictional issue, and was set down for hearing, after due notice to the debtor. On January 3, 1939, the court rendered an opinion, filed findings of fact and conclusions of law, and decreed that the petition of the debtor be dismissed with costs.

Appeal was duly taken fom this decree of January 3, 1939, dismissing the farmer-debtor petition, but appellant obtained no supersedeas. We affirmed the decree on January 10, 1940. Benitez v. Bank of Nova Scotia, 109 F.2d 743, 747. We then held that the applicable definition of "farmer" was that contained in § 1(17) of the Bankruptcy Act, as amended by the Chandler Act, 52 Stat. 841, 11 U.S.C.A. § 1(17); and we were clear that under that definition the debtor, on her own testimony, failed to qualify as a "farmer". It turned out that we were mistaken in supposing that the new definition of "farmer" in the Chandler Act was intended to supersede the earlier definition of that word in § 75, sub. r. On certiorari the Supreme Court held that the debtor's activities must be tested by the definition in § 75, sub. r; and therefore our judgment was reversed and the case was remanded to this court for consideration of other questions in the light of the Supreme Court's decision. Carlota Benitez Sampayo v. Bank of Nova Scotia, 1941, 313 U.S. 270, 61 S.Ct. 953, 85 L.Ed. 1324.

On January 30, 1942, after reargument of the case upon the remand to us, we vacated the decree of the District Court, directed that further findings be made and that the petitioner's qualification as a "farmer" should be tested by the definition in § 75, sub. r. Benitez v. Bank of Nova Scotia, 125 F.2d 523.

The further history of appellant's farmer-debtor petition will be set forth later at an appropriate place.

Meanwhile, the foreclosure sale pursuant to the equity decree of August 22, 1938, was held as scheduled on October 13, 1938, despite appellant's theory that the filing of her farmer-debtor petition operated, under § 75, subsections o and p, automatically to stay all further proceedings in the equity case, and, under subsection n, drew into the exclusive jurisdiction of the bankruptcy court all of the real and personal property of the Comunidad, and of the corporation, or at least her undivided fractional interest in this specific property. The Bank of Nova Scotia became the purchaser of the pledged notes. An order confirming the sale was entered October 24, 1938. The Bank of Nova Scotia filed independent bills in equity in the District Court, in the nature of suits ancillary to the original equity suit previously mentioned, for the foreclosure of the mortgages securing the pledged notes acquired by the Bank in the first foreclosure sale. These bills named as defendants the Benitez Sugar Company and the members of the Comunidad, including Carlota Benitez Sampayo and her husband J. Octavio Seix. The ancillary suits were consolidated with the original equity suit as to certain issues not adjudicated by the decree of August 22, 1938, to form consolidated equity case No. 2151. After trial of the consolidated cause, the District Court on September 18, 1939, made findings of fact and conclusions of law and entered a decree whereby the sale and foreclosure of the mortgaged properties were directed to be made by a master, free and clear of all claims of the defendants, including appellant and her husband. The sale thus directed included the properties embraced in parcels 1, 4 and 5 which the United States subsequently sought to condemn in the case now at bar.

Appellant and her husband petitioned for leave to appeal from the said foreclosure decree of September 18, 1939, and the appeal was allowed by a judge of this court. However, no further steps were taken to prosecute this appeal, and on April 25, 1940, upon motion by the Bank as appellee, we entered an order docketing and dismissing this appeal.

The foreclosure sale ordered by the decree of September 18, 1939, was duly held and confirmed, and the said properties were on December 23, 1939, conveyed and delivered to the Bank of Nova Scotia by deed approved by the court. This deed was duly presented to the Registry of Property and title to the said properties was recorded in the name of the Bank free and clear of all claims, liens or encumbrances, with certain exceptions not now material. By a deed executed on September 25, 1940, the Bank sold and conveyed the said properties to Juan Angel Tio and wife, subject to a purchase money mortgage. This deed and mortgage back were duly recorded in the Registry of Property, and such record subsisted at the time of the taking of the said properties by the United States in the present condemnation proceedings.

We now return to the proceedings below in the case at bar, and more particularly to the judgment of March 23, 1942, dismissing appellant's claim of any right, title or interest in the properties condemned. This judgment was based upon conclusions of law to the effect that appellant's claim had been finally adjudicated on the merits by the foreclosure decrees of August 22, 1938, and September 18, 1939, made in the equity proceedings, and that the validity of all or any of the proceedings had in the equity cause "subsequent to the filing by Carlota Benitez Sampayo of her voluntary and individual petition under section 75 of the Bankruptcy Act [was] in no way affected thereby, irrespective of whether said petition was properly filed and pending." In this, the District Court merely followed our ruling in Benitez v. Bank of Nova Scotia, 1942, 125 F.2d 519, 522, certiorari denied, 317 U.S. 624, 63 S.Ct. 31, 87 L.Ed. 505; Id., 317 U.S. 708, 63 S.Ct. 153, 87 L.Ed. 565 (appeal from a deficiency judgment). We took the same position in our second decision in the farmer-debtor bankruptcy case, Benitez v. Bank of Nova Scotia, 1942, 125 F.2d 523, 531, 532, certiorari denied, 316 U.S. 702, 62 S.Ct. 1308, 86 L.Ed. 1770; Id., 317 U.S. 706, 63 S.Ct 24, 87 L.Ed. 563.

We proceed to recapitulate the basis of our previous rulings on this point.

█ In determining the nature of appellant's interest in the Comunidad property, it is necessary to look beyond §§ 326–340 of the Civil Code of Puerto Rico, 1930 Ed., dealing with the common ownership of property. There was obviously more than a simple common ownership of property here, for by agreement of the associates the property was devoted to the conduct of a large business enterprise on joint account. Legal consequences followed from this fact, both in respect to the rights of the associates inter se and also to the rights of creditors. It may be that the Comunidad was not endowed with full juridical personality as a civil law partnership. And it may be, also, that it had not all the characteristics of a conventional Anglo-American partnership. The differences, if any, are not important for present purposes, and we believe that the Comunidad, as an association of co-owners, carrying on an extensive business for profit, may properly be deemed a partnership within the meaning of the Bankruptcy Act.

This very Comunidad was before the Supreme Court of Puerto Rico in Bank of Nova Scotia v. Benitez, 52 P.R.R. 681. In that case a creditor of one of the members of the Comunidad brought suit on an individual indebtedness of the member and attached a parcel of real estate which was recorded in the name of the member but which was in fact the property of the Comunidad. Subsequent to this attachment the Comunidad executed a promissory note in favor of the Bank of Nova Scotia which it secured by a mortgage on the same parcel of land. The separate creditor recovered judgment. The court held that the mortgage of the Bank took priority over the attachment by the separate creditor, though the latter was prior in time. It was reasoned that the individual debtor had by the Comunidad contract "disposed of his common interest in the attached property and had made it form part of a community of property consisting of a going business". In practical effect the court did what the common law courts have been inclined to do, though not always with complete consistency, namely, it worked out the property rights on the basis of treating the

firm as a separate entity having its own property and contract obligations; the interest of each of the associates in the Comunidad was regarded, not as an interest in specific property but as a chose in action, the value of which could only be ascertained upon liquidation and possible partition after the termination of the Comunidad. Further, the Supreme Court of Puerto Rico said (p. 687):

"In this case there was a contract. Its terms prevail and their examination indeed discloses the formation of a community broader than the ordinary one in its scope. It is not limited to the administration of a piece of realty in possession of the community, as for example a house, but goes further and comprises the administration of important agricultural properties in full production in connection with a sugar corporation. Nevertheless, it cannot be said therefore that something was created which was in violation of law, or without capacity to contract valid obligations."

It is true that the formal contract between the members expired in 1935. Under § 334 of the Civil Code of Puerto Rico, 1930 Ed., the members were no longer bound by contract to keep the property undivided, but any member could have called for a liquidation and accounting, and a partition of the common property remaining after satisfaction of the debts of the Comunidad, if such were feasible. (See Civil Code of Puerto Rico, §§ 335, 338.) In fact, however, the business was conducted after 1935 in full operation. The expiration of the formal agreement in 1935 did not affect the priorities of the Comunidad creditors. Even after dissolution a partnership can still be put in bankruptcy as an entity. Bankruptcy Act, § 5, 11 U.S.C.A. § 23. In re L. Stein & Co., 7 Cir., 1904, 127 F. 547, 549; In re Coe et al., D.C., 1907, 157 F. 308; In re Wells, D.C., 1924, 298 F. 109; In re Lomont et al., D.C., 1925, 9 F.2d 407. In Liberty National Bank of Roanoke v. Bear, 1928, 276 U.S. 215, 48 S.Ct. 252, 72 L.Ed. 536, the court held that the recognition of the partnership as a separate entity under the provisions of the Bankruptcy Act involved the conclusion that an adjudication of a partnership's bankruptcy was not in legal effect an adjudication that the partners were individually bankrupt.

On October 13, 1938, when appellant filed her petition under § 75, § 5, sub. h of the Bankruptcy Act expressly provided that "In the event of one or more but not all of the members of a partnership being adjudged bankrupt, the partnership property shall not be administered in bankruptcy, unless by consent of the partner or partners not adjudged bankrupt; but such partner or partners not adjudged bankrupt shall settle the partnership business as expeditiously as its nature will permit, and account for the interest of the partner or partners adjudged bankrupt."[1] 30 Stat. 548. Marnet Oil & Gas Co. v. Staley, 5 Cir., 1914, 218 F. 45; In re Gerstenzang, D.C., 1931, 52 F.2d 863; In re Bieber, D.C., 1922, 283 F. 857. In the last-cited case a state court of equity had acquired jurisdiction of partnership property in a suit for a partnership accounting. Thereafter one of the partners filed his individual petition in bankruptcy, and it was held that such bankruptcy proceedings did not disturb the state court's possession of the partnership assets.

"The object of section 75 is to save and protect the farmer's home and farm." Sen.Rep.No. 1045, 76th Cong., 1st Sess., 1939, p. 2. The creditors are kept at bay and the farmer is allowed for a limited period to continue in operation of his farm under specified conditions. Where a farm is operated by a partnership it would seem clear that a petition under § 75 should be filed by the partnership (as provided by paragraph (4) of subsection s, 49 Stat. 945), if the object is to continue the farm in operation and to hold off such partnership creditors from resorting to firm assets for payment of firm debts. If the filing of an individual petition under § 75 by the holder of a one-twelfth interest in the partnership had the effect contended for by appellant it would indeed be a case of the tail wagging the dog; and it would result in a tangle of confusions from the standpoint of bankruptcy administration which could not have been within the contemplation of Congress when it enacted § 75. An individual member of a partnership, even of a dissolved partnership, is not entitled to be put into exclusive possession of a fractional part of specific partnership property prior to a partnership liquidation and accounting and

---

[1] This provision, substantially unmodified by the Chandler Act, now appears as § 5, sub. i, 52 Stat. 846, 11 U.S.C.A. § 23(i).

the application of firm property to the payment of firm debts. The other members of the partnership have an interest in insisting upon such application of the partnership property, in order that they may be relieved of their individual liability for firm debts payable out of their separate estates. This partnership liquidation and accounting cannot take place in the bankruptcy court when all it has before it is an individual petition by one member of the partnership.

Appellant's contention may be tested by an assumed case: Suppose a farmer has a one-twelfth interest as a partner in a country store. He files a farmer-debtor petition under § 75. Under appellant's theory the non-bankrupt partners automatically lose their power to liquidate the business, to apply firm property to the payment of firm debts, to sell the stock in trade, because the bankruptcy court has become vested with exclusive jurisdiction over petitioner's undivided interest in all specific partnership property. It seems to us that in such a case the partnership property would not be subject to bankruptcy administration but that the non-bankrupt partners should proceed as under § 5 when one partner has filed an individual petition in bankruptcy.

For these reasons we have held in the previous appeals that appellant's farmer-debtor petition, even if it were properly filed, did not, under § 75, sub. n, draw into the exclusive jurisdiction of the bankruptcy court any specific property of the Comunidad or undivided interest therein,[2] but rather that the bankruptcy court was vested with exclusive jurisdiction over appellant's true interest in the Comunidad, which was in the nature of a chose in action, an abstract and indeterminate share the value of which could only be ascertained after a liquidation of the Comunidad business and an accounting. Also, we have held that foreclosure proceedings brought by a creditor against the partnership, seeking to realize on partnership property given as security for partnership debts, are not within the stay provisions of subsections o and p of § 75, when a partner has filed only an individual petition under § 75. In Benitez v. Bank of Nova Scotia, 1942, 125 F.2d 519, 522, we contrasted such proceedings with proceedings directed against a farmer-debtor individually with a view to obtaining a personal deficiency judgment.

This interpretation, we believe, is more in consonance with the Bankruptcy Act as a whole. It does not impair the remedial purposes of § 75, because the Comunidad, if primarily engaged in farming, could have filed its collective petition under § 75 and thus obtained the full relief there provided.

Even if we were wrong in this, the matter has become academic because, as we judicially know from other litigation which has been pending before us, it has finally been determined that appellant was not a "farmer" within the meaning of § 75, sub. r, and hence was not a person entitled to the special relief afforded by that section.

This brings us to the closing history of appellant's farmer-debtor petition. Appellant was not satisfied with the terms of our mandate to the District Court directing further proceedings in the farmer-debtor bankruptcy case, Benitez v. Bank of Nova Scotia, 1942, 125 F.2d 523, and applied for certiorari, which was denied, 316 U.S. 702, 62 S. Ct. 1308, 86 L.Ed. 1770, rehearing denied, 317 U.S. 706, 63 S.Ct. 24, 87 L.Ed. 563. After our mandate went down, an order was entered by Honorable Robert A. Cooper, the regular district judge, setting the case down for further hearing. Appellant filed an affidavit of prejudice. Judge Cooper took no formal action thereon. On September 9, 1942, Judge Cooper left Puerto Rico for a vacation in continental United States. The further proceedings in the farmer-debtor case therefore came on to be heard before Honorable A. Cecil Snyder, a judge of the Supreme Court of Puerto Rico, who had been designated by the President of the United States to serve as acting judge in the District Court of the United States for Puerto Rico in accordance with the provision of § 41 of the Organic Act, 39 Stat. 966, 48 U.S.C.A. § 863, reading as follows:

---

[2] Mangus v. Miller, 1942, 317 U.S. 178, 63 S.Ct. 182, 183, 87 L.Ed. 169, cited by appellant, is not inconsistent with this conclusion. In that case the farmer-debtor, who was a joint tenant with his wife of a land-purchase contract, was held entitled to file his petition under § 75 and thus to subject his interest as a joint tenant to the jurisdiction of the bankruptcy court. There was no partnership. It did not appear whether the wife "was an insolvent farmer-debtor within the meaning of § 75, sub. r, and so entitled to the benefits of the Act."

"In case of vacancy or of the death, absence, or other legal disability on the part of the judge of the said District Court of the United States for Puerto Rico, the President of the United States is authorized to designate one of the judges of the Supreme Court of Puerto Rico to discharge the duties of judge of said court until such absence or disability shall be removed, and thereupon such judge so designated for said service shall be fully authorized and empowered to perform the duties of said office during such absence or disability of such regular judge, and to sign all necessary papers and records as the acting judge of said court without extra compensation."

On October 29, 1942, Judge Snyder, as such acting judge, made findings of fact and conclusions of law and entered a decree again dismissing the petition on the ground that appellant was not a "farmer" within the meaning of subsection r of § 75 of the Bankruptcy Act, and that the court therefore had no jurisdiction to entertain the petition.

Appellant took an appeal to this court from the said decree of October 29, 1942. The decree was not challenged on the merits, as to the ruling that appellant was not a "farmer" within the meaning of § 75, sub. r, but only on the ground that the proceedings before Judge Snyder were coram non judice. On May 24, 1943, we entered the following order in the case: "Upon motion, Leave is hereby granted appellant herein to file typewritten copies of the transcripts of record on or before August 16, 1943, provided such copies may be prepared without withdrawal of the original transcripts of record. Otherwise the deposit for printing such transcripts of record must be made by July 1, 1943". Appellant did not make the deposit for printing on or before July 1, 1943, or at any time. Appellant did not file typewritten copies of the transcript of record on or before August 16, 1943. Nor did appellant, within that time, apply to this court for a further extension. On August 17, 1943, we entered an order dismissing the appeal for want of diligent prosecution. On December 17, 1943, our mandate in the case was issued and forwarded to the District Court. A journal entry under date of December 30, 1943, appears in the records of the District Court, reciting that the mandate of the Circuit Court of Appeals dismissing the appeal for want of diligent prosecution, "received and filed on December 23, 1943 is ordered to be spread upon the minutes of the Court". Appellant filed a notice of appeal on January 29, 1944, from this order directing the clerk to spread the mandate upon the minutes of the court. Such a routine, and probably superfluous, direction to the clerk is obviously not a "final decision" within the meaning of 28 U.S.C.A. § 225. Nor is it an appealable order in proceedings in bankruptcy within the meaning of § 24 of the Bankruptcy Act, 52 Stat. 854, 11 U.S. C.A. § 47. Our mandate did go down to the District Court. We are at a loss to understand what the District Court could be expected to do with the mandate other than to spread it upon the records of the court. In Benitez v. Bank of Nova Scotia, 141 F.2d 942, we have this day entered an order dismissing this preposterous appeal.

Appellant took a second appeal in the deficiency judgment case, in which she sought to attack collaterally the decree of Judge Snyder of October 29, 1942, dismissing the farmer-debtor petition, on the ground that Judge Snyder had no authority to hear and dispose of the case and that the decree was therefore coram non judice and void. In Benitez v. Bank of Nova Scotia, 141 F.2d 939, decided this day, we have rejected this contention and upheld the said decree as against collateral attack. The following is quoted from our opinion in that case:

"The contention of appellant that the executive order of the President so designating Judge Snyder was void and conferred no power on him to function as acting judge in the District Court is sufficiently answered in our opinion in Petition of Capo, 1942, 131 F.2d 531.

"It is further argued that when the affidavit of prejudice was filed Judge Cooper should have followed the procedure indicated in §§ 20 and 21 of the Judicial Code, 28 U.S.C.A. §§ 24, 25, that is, he should have caused the fact of his disqualification to be entered on the records of the court and ordered that an authenticated copy thereof should forthwith be certified to the senior circuit judge of the First Circuit, whose duty it would then become to designate another district judge from the circuit to go down to Puerto Rico to hear the case. But the Judicial Code and the Organic Act contain overlapping provisions for the designation of a substitute judge in the District Court of

the United States for Puerto Rico in case the regular judge is absent or disqualified. It would be an absurd result if upon the filing of an affidavit of prejudice the senior circuit judge had to designate a district judge from Maine, New Hampshire, Massachusetts or Rhode Island to hold court in Puerto Rico when there is already available in Puerto Rico an acting judge fully empowered to sit by designation of the President of the United States under § 41 of the Organic Act. No such interpretation of the law is called for. The situation is analogous to that presented where an affidavit of prejudice is filed against a district judge in a district having more than one district judge. In such a case the judge against whom the affidavit is filed withdraws, and the proceedings come on for hearing before another judge of the district without the necessary intervention of the senior circuit judge. See §§ 21 and 23 of the Judicial Code, 28 U.S.C.A. §§ 25, 27. Judge Snyder, as acting judge of the District Court, was fully qualified to conduct the further hearing on appellant's farmer-debtor petition and to enter the decree of October 29, 1942, dismissing the same."

Thus we must take it as finally settled that appellant was not a "farmer", and hence not entitled to the benefits of § 75.

As above set forth, appellant's interest in the properties now in question was extinguished by the sale held pursuant to the foreclosure decree of September 18, 1939. Why are not appellant and her husband, who were both parties to that foreclosure decree, precluded from asserting any further claim to the properties? Their appeal therefrom was dismissed for want of prosecution. At the date of the foreclosure decree of September 18, 1939, and of the sale thereunder, there was no farmer-debtor petition under § 75 pending in the bankruptcy court. Such petition had been dismissed by decree entered January 3, 1939. There had been no supersedeas. The decree dismissing the petition was not vacated by us until January 30, 1942, Benitez v. Bank of Nova Scotia, 125 F.2d 523, when we remanded the case to the District Court for further proceedings,

which eventuated in a second decree dismissing the farmer-debtor petition on the ground that appellant was not a farmer and therefore that the bankruptcy court had no jurisdiction to entertain the petition.

As matters stood on September 18, 1939, the District Court, on the equity side, had jurisdiction of the foreclosure proceedings and power to enter the foreclosure decree. The most that could be said would be that such foreclosure decree was at that time vulnerable as against the possibility that as a result of appellant's pending appeal from the decree dismissing her farmer-debtor petition it should eventually be determined that the petition was properly filed and that appellant was entitled to the benefits of the special remedial provisions made available to farmers.[3] See Wilson v. Alliance Life Insurance Co., 5 Cir., 1939, 108 F.2d 150, 152. Kalb v. Feuerstein, 1940, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370, much relied on by appellant, is not in point because there the petitioners under § 75 were undoubtedly "farmers" entitled to the protection of the act.

The contention of appellant on this branch of the case comes down to this: that a person not a "farmer", by the expedient of filing a petition under § 75, sub. r, and notwithstanding the prompt dismissal of the petition by the bankruptcy court, may invalidate any intermediate foreclosure proceedings and hold off his creditors for years while he keeps the litigation alive by appeal and application for certiorari, even though when the smoke of battle clears, it is eventually determined that the debtor was not entitled to invoke § 75 after all. Such a claim carries its own refutation.

It follows from the foregoing that appellant had lost her interest in the properties when the petition for condemnation was filed. Therefore she has no standing to challenge the right of the government, under the applicable condemnation statutes, to condemn the properties for the public use set forth in the petition for condemnation.

The judgments of the District Court are affirmed.

3 This was the premise upon which we framed our mandate, over appellant's objection, in the first appeal from the deficiency judgment. Benitez v. Bank of Nova Scotia, 1942, 125 F.2d 523, 531, 532, certiorari denied, 317 U.S. 624, 63 S.Ct. 31, 87 L.Ed. 505; Id., 317 U.S. 708, 63 S.Ct. 153, 87 L.Ed. 565.